HAROLD TRAUMAN, Plaintiff, *v.* CITY OF NEW YORK et al., Defendants.

Supreme Court, Trial Term, Bronx County, June 16, 1955.

*Peter Campbell Brown, Corporation Counsel (Paul Selby* of counsel), for City of New York, defendant.

*Jack Rich* and *Edward Pine* for Joseph Yannetti, defendant.

*Joseph Sint* and *Daniel A. Novok* for plaintiff.

STREIT, J. On May 21, 1952, this plaintiff, a rank novice and paying patron of the Pelham Bay public golf course, owned and operated by the City of New York, was struck over the left eye by a golf ball and sustained serious injury. He was playing on the ninth fairway, which runs from north to south. Yannetti, another player, drove a ball from the tee of the first hole, which is contiguous and parallel to the ninth hole, but is played from south to north. Yannetti's drive sliced to the right, striking plaintiff as above indicated.

The plaintiff has brought this action, charging nuisance against the city in that the golf course was not properly constructed and dangerous, negligence against the city for failure to properly supervise the course, and to employ competent help, and negligence against Yannetti in failing to warn the plaintiff of his intention to tee off.

The evidence shows that the ninth green is about 25 feet to the right of and somewhat elevated above the first tee. Aside from some elevation and rough grass between the ninth and first fairways, there was no other barrier nor any trees or shrubs between these two holes for a distance of, according to the testimony, varying from 125 to about 200 yards, north from the first tee.

The defendant Yannetti, called by the plaintiff, testified that he was one of a foursome arranged by the starter employed by the city; that the starter had given them the signal to tee off, and that the other three members of his foursome had taken their drives. Then he, Yannetti, looked ahead but saw no one on the first hole, but he did see some players on the ninth fairway to the right, the nearest of whom was 150 to 175 yards away from his tee and about 5 yards to the right of a tree located between the two holes. He said that this person would have been 50 yards to the right of a point on a straight line from the first tee had his ball traveled straight down the first fairway. He testified that he first yelled " fore ", then drove his ball, which traveled in the direction of the ninth fairway, and that its flight formed a high looping arc.

David Mannes, called by the plaintiff, testified that on the afternoon in question he was playing in a threesome with the plaintiff; that they were on the ninth hole, proceeding toward

the green; that the plaintiff was on the ninth fairway, about 5 feet from the dividing line, 50 to 75 feet away from the ninth green and about 125 feet from the first tee facing the first hole and addressing his ball; that he, Mannes, was 20 to 25 feet to the left of the plaintiff when he looked toward the first tee and saw Yannetti take a practice swing; then he said he saw Yannetti without warning drive his ball, which sliced to the ninth fairway, striking plaintiff over the eye. He testified that he saw four players on the first tee but that he did not see any of the others drive off, and that he saw some players on the first fairway about 150 yards from the first tee.

The plaintiff testified that this was the second time in his life that he had ever played golf. He said he was on the ninth hole about 50 feet from the green; that there was no rough separating the ninth from the first hole at that point and that there was no way of telling whether he was on the first or ninth fairway. He testified further that at that spot he was 100-odd feet from the first tee, 20 to 25 feet west of the line of flight of the first tee, and facing in a southwesterly direction when he lined up his ball and was struck. He said that when he was about 200 feet in back of his ball and had passed the trees, he saw some players on the first fairway about 125 yards from the first tee but did not observe what these players were doing. He said that when he was 85 yards from the ninth green and as he was walking towards his ball he did see some men on or near the first tee. He said that when he was standing and addressing his ball he did not see anyone tee off from the first tee nor did he know that anyone had teed off, nor did he hear any shout or warning of '' fore ''.

Despite the thousands of golf players and hundreds of golf clubs in this State, there is a dearth of cases on this subject, but authority is not lacking in other jurisdictions for the precise points raised at this trial.

The charge that the golf course was not properly constructed and dangerous and constituted a nuisance because the first and ninth holes are in such proximity to each other and without any barriers that a player on number nine fairway was unduly exposed to danger by a ball driven from number one tee does not constitute a nuisance nor is it negligence per se. The question presented here is whether the condition of the course operated by the city unreasonably subjected plaintiff to danger and hazards over and above those commonly inherent in the game of golf. The operators of golf courses may reasonably expect that because of the somewhat dangerous nature of the game, accidents may occur at any time, but to subject them to liability

for such an accident would make them insurers of all players on the course. This is not the law. (*Petrich* v. *New Orleans City Park Improvement Assn.*, 188 So. 199; *Campion* v. *Chicago Landscape Co.*, 295 Ill. App. 225.) As was pointed out in the *Campion* case (*supra,* p. 235): '' The construction of the course is criticized because numerous fairways running parallel are played in opposite directions and because the fairways are narrow and not properly safeguarded. Plaintiff's own expert admitted, however, that he did not know of any golf course where at some place or other it would not be possible for someone to slice or hook his ball into another fairway, and it is a matter of common knowledge that on practically all golf courses, including those constructed on vast acreages, where the fairways are wide and well separated by rough and shrubs, there are parallel holes, played in opposite directions, where a sliced or hooked ball may and frequently does go into another fairway. This is one of the incidents of all courses, with which golfers generally are familiar.''

The other cause of action is founded in negligence and is based on the theory that Yannetti, whose drive caused the accident, was under a duty to give warning that he intended to make a stroke. Should plaintiff prevail on this cause, then the liability of the city would be joint with that of Yannetti, who obeyed the instruction of the starter in driving his ball. Yannetti's act became that of the starter, an employee of the city acting in the course of his employment. (*Slotnick* v. *Cooley,* 166 Tenn. 373.)

The principle involved here is that a golfer owes a duty to use reasonable care to avoid injuring other players on the course. A player intending to strike a ball is under a duty to give the traditional warning by yelling '' fore '' to persons in his line of play or those in such a position that danger to them is reasonably anticipated. (*Johnston* v. *Blanchard,* 301 N. Y. 599; *Petrich* v. *New Orleans City Park, supra*; *Toohey* v. *Webster,* 97 N. J. L. 545.)

The player, however, is under no duty to give advance warning to persons not in his line of play nor to persons on contiguous holes or fairways, where the danger to them is not reasonably anticipated. On this point there is an abundance of authority throughout the country that participants must know that many bad shots carry the ball to the right or left of an intended line of play and that such a player would be endangered by such bad shots. This risk all golf players must accept. (*Rocchio* v. *Frers,* 248 App. Div. 786; *Benjamin* v. *Nernberg,* 102 Pa. Superior Ct. 471; *Campion* v. *Chicago Landscaping Co., supra*;

*Walsh* v. *Machlin,* 128 Conn. 412; *Houston* v. *Escott,* 85 F. Supp. 59.)

There is a sharp conflict in the evidence before me as to just which part of the ninth fairway the plaintiff was standing on. There is also a dispute as to whether there were any players on the first fairway within range of those driving from the first tee. The defendant Yannetti, who was called by the plaintiff, placed plaintiff at more than 150 yards away from the first tee and at least 5 yards to the right of the dividing line of the two holes. The plaintiff and his companion put the plaintiff at about 125 feet from the first tee and only 5 feet from the dividing line.

I find from the evidence adduced that the plaintiff was not in Yannetti's line of play and that the plaintiff was not in such a position that the starter or Yannetti could reasonably anticipate would be dangerous. I am also satisfied that Yannetti did not violate subdivision 1 of rule 3 of the United States Golfing Association Rules and that there were no players within his range from the first tee.

The language of the Scottish court in *Andrew* v. *Stevenson* ([1905], 13 Scot. L. T. 581, 582), is particularly appropriate in this connection: " ' The risks of accident in golf are such, whether from those playing behind, or from those meeting the player or crossing his line of play, that, in my opinion, no one is entitled to take part in the game without paying attention to what is going on around and near him, and that one who receives an injury, which by a little care and observation on his part might have escaped, should not be entitled to claim damages for that injury.' * * * persons engaged in a game must take all the risks which may arise in its pursuit."

The injury was serious, the accident was most unfortunate, but there was no nuisance here nor was either of the defendants negligent. I am constrained to grant the motion to dismiss the complaint. Complaint dismissed. Judgment directed for the defendants.