470 So.2d 245 (1985)
Alvin BAKER
v.
Don THIBODAUX and First of Georgia Insurance Company.
No. CA-2490.
Court of Appeal of Louisiana, Fourth Circuit.
May 8, 1985.
*246 Therese B. Forrester, David L. Carrigee, New Orleans, for plaintiff/appellant.
David V. Batt, Lobman & Carnahan, Metairie, for defendant/appellee Timberlane Country Club.
Thomas E. Loehn, Boggs, Loehn & Rodrigue, New Orleans, for defendants/appellees Don Thibodaux and First of Georgia Ins. Co.
Before, REDMANN, C.J., and KLEES and ARMSTRONG, JJ.
ARMSTRONG, Judge.
Plaintiff, Alvin Baker, filed suit against defendants, Don Thibodaux and First of Georgia Insurance Company (Thibodaux's homeowner's insurer) for damages Baker sustained when he was struck in the eye by a golf ball hit by Thibodaux. Baker later amended his suit to add Timberlane Country Club (hereinafter Timberlane) as a defendant.
Trial was held on January 5, 1984, and on March 1, 1984 the trial court rendered a judgment in favor of defendants dismissing plaintiff's suit at his costs. It is from this verdict that plaintiff has appealed.
On November 11, 1980, Baker was part of a foursome playing golf on the Timberlane golf course. Thibodaux was playing in a separate foursome immediately ahead of Baker's foursome. At the time of the accident plaintiff was playing the 15th hole and Thibodaux the 16th. The 15th and 16th holes are parallel and contiguous, the 15th hole running south to north from tee box to green and the 16th running from north to south from tee box to green.
Immediately prior to the accident, Baker was walking towards his ball which had landed near the rough on the left side of the 15th fairway when he heard someone yell "fore." Upon hearing this warning he looked up and saw a ball bounce approximately thirty feet away from him headed in his direction. In an attempt to avoid being struck by the ball, plaintiff tried to throw his head back and do a back flip. Plaintiff testified that the ball hit him within a second after he saw it coming towards him.
Thibodaux testified that he had attempted to hit a straight shot on the 16th but ended up hooking the ball to the left. He further testified that no one was in the 16th fairway when he teed off. He admitted that he had not hollered "fore" prior to his tee shot on the 16th, but both he and other members of his foursome testified that they had yelled "fore" upon observing the ball veer to the left.
In ruling in favor of defendants, the trial court held that Thibodaux was not negligent because 1.) an occasional bad shot is an inherent part of the game, 2.) Thibodaux discharged his duty to a non-companion player by yelling "fore" as soon as the erratic nature of the shot was observed, and 3.) Thibodaux acted as a reasonable golfer under the circumstances. The trial court further held that Timberlane was not negligent as 1.) the premises were reasonably safe for their intended use, 2.) the risk of being hit by an erratic golf ball is an ordinary risk and not a hidden peril requiring correction or a specific warning, and 3.) Timberlane was justified in relying upon all of its golfers to give warnings commensurate *247 with the differing duties owed to companion and non-companion players. We affirm.
In a reasoned decision, the trial court stated:
Although the question of the duty owed by a golfer engaged in the game of golf is a relatively recent one in Louisiana, the available jurisprudence indicates a clear distinction between the duty owed to golfers on other tees and to players in one's own group. In Murphy v. Podgurski, 236 So.2d 508 (La.App. 4 Cir.1970) the plaintiff was in the rough area between the 8th and 9th tee. He was injured when the defendant's drive onto the fairway of the 8th hole `pulled' to the left. The court was presented with two questions directly applicable here: first, whether the defendant was negligent in failing to refrain from striking the ball after having seen the plaintiff; and, second, whether the defendant was negligent in not shouting a warning prior to driving his ball. Murphy resolved both issues favorably to the defendant and articulated the general rule applicable to a golfer:
The general rule, as reflected by the decision of our sister states, is that a golfer owes a duty to use reasonable care to avoid injuring other players on the course. A player intending to strike a ball is under a duty to give the traditional warning by yelling `fore' to persons in his line of play or those in such a position that possible injury to them is reasonably foreseeable. However, the player is under no duty to give advance warning to persons on contiguous holes or fairways, where the danger to them is not reasonably anticipated nor is he under a duty to give a specific warning to another player whom he knows already has him in view and is aware of his intended drive.
(236 So.2d at 509)
The result in Murphy is to be distinguished from Allen v. Pinewood Country Club, Inc., 292 So.2d 786 (La.App. 1st Cir.1974) wherein the court indicated agreement with the rule announced in Murphy but rejected its application to a situation involving an injury to a companion player (i.e. in the same foursome). The court stated:
We find that plaintiff had the right to assume a member of his own party would not drive while plaintiff was standing in full view near the intended line of flight with plaintiff's back turned toward the impending play.... Plaintiff could reasonably anticipate that under the circumstances, he would receive a warning and be allowed sufficient time to step out of defendant's line of flight.
(292 So.2d at 790)
Both Murphy and Allen acknowledged that many shots go astray during a game of golf thereby endangering players on contiguous fairways. Yet both courts characterized this as a risk all golfers accept. The language of Murphy, quoting from a leading out of state case, Benjamin v. Nernberg, 102 Pa.Super. 471, 157 A. 10 (1931), is illustrative:
* * * It is well known that not every shot played by a golfer goes to the point where he intends it to go. If such were the case, every player would be perfect and the whole pleasure of the sport would be lost. It is common knowledge, at least among players, that many bad shots must result although every stroke is delivered with the best possible intention and without any negligence whatever. * * *
(236 So.2d at 510)
Accordingly, the court finds that defendant Thibodaux was not negligent herein because: an occasional `bad shot' is an inherent part of the game; defendant discharged his duty to a non-companion player by yelling `fore' as soon as the erratic nature of the shot was observed; and, he acted as a reasonable golfer under the circumstances.
Baker also argues that Thibodaux is liable under LSA-C.C. art. 2316 for damages occasioned by his want of skill. Under this *248 argument Thibodaux is liable because his want of skill caused him to make a bad shot. We disagree.
We do not believe that the phrase "want of skill" contemplates the shot here in question. As was stated above, such shots are an integral part of the game of golf and can result from the efforts of even the most qualified and conscientious of golfers.
Baker next argues that the golf course had been negligently designed and that Timberlane failed to warn plaintiff of any defect in the course. Baker failed to produce any expert witnesses, however, to testify that the course was negligently designed or contained hidden dangers. He chose instead to rely on the testimony of "expert" golfers, that is, individuals who play golf on a regular basis. The trial court did not accept such witnesses as experts.
It is certainly true that experience alone is enough to qualify a witness as an expert, Maxwell v. State, Through Dept. of Transportation and Development, 391 So.2d 1230 (La.App. 1st Cir.1980), writ denied, 394 So.2d 281 (La.1980), and that scientific or professional training is not a prerequisite to a finding that a witness is an expert. State v. Normandale, 174 La. 835, 141 So. 851 (1932). But in the instant case plaintiff failed to demonstrate that the experience the witnesses had obtained from playing golf qualified them as experts in the field of course design. "The qualifications of an expert witness rests within the sound discretion of the trial court, and his determination will not be disturbed except for a showing of manifest error". Roberts v. Tiny Tim Thrifty Check, 367 So.2d 64, 66 (La.App. 4th Cir.1979). We find no such error.
Accordingly, we agree with the trial court's finding that plaintiff failed to prove that Timberlane golf course was negligently designed.
Baker also claims that Timberlane knew or should have known of the dangers arising out of the alignment of the 16th tee box and 15th green but failed to take the necessary steps to protect the golfers. In its Reasons For Judgment the trial court discussed this argument as follows:
The duty of the proprietor of a sports facility was stated in Rosenberger v. Central Louisiana District Livestock Show, Inc., 312 So.2d 300 (La.1975):
The occupier of premises used for athletic events or amusements must maintain the premises in a reasonably safe condition and furnish such equipment or services as is necessary to minimize or prevent injury to others from conditions which probably, or foreseeably may cause damage.
(312 So.2d at 305)
However, as the court stated in Hyland v. Durr, 212 So.2d 158 (La.App. 4 Cir.1968):
It is well settled that the owner or operator of a place of public amusement is not an insurer of the safety of its patrons but is liable for injuries received by them only if guilty of negligence. It is equally well settled that one who participates in a sport assumes the ordinary risks attendant upon such participation.
(212 So.2d at 161)
Although the possibility of an erratic shot arriving and causing damage at a parallel or contiguous hole is foreseeable, in Campion v. Chicago Landscape Co., 295 Ill.App. 225, 14 N.E.2d 879 (1938) the leading out of State jurisprudence on this subject, the court determined that use of parallel or contiguous holes was not negligence per se.

... the question presented is not whether defendant should have foreseen that an accident might happen, but rather whether the condition of the course operated by defendant unreasonably subjected plaintiff to damages and hazards over and above those commonly inherent in the game of golf. Persons operating any golf course may reasonably expect that because of the somewhat dangerous nature of the game, accidents may occur at any time.

*249 (14 N.E.2d at 883)
This rationale is equally applicable here.
Plaintiff has also suggested that if Timberlane was not negligent by locating these holes in this configuration, then Timberlane was negligent in failing to `furnish such equipment or services as [were] necessary to minimize or prevent injury' as required by Rosenberger, supra, in failing to increase foilage, erect screens, or place warnings to the endangered players.
The trees separating the two greens were approximately 25 feet high and somewhat dense. Therefore the foilage was reasonable for the circumstances. As to the issue of protective screening, the evidence indicated that the purpose of screening is to protect other players at the same tee. Therefore, the absence of a protective screen is unrelated to the plaintiff's injury.
Regarding warnings, plaintiff has suggested that Timberlane should have either warned players on the 16th hole to hold up play to allow those on the 15th to pass out of the zone of danger, or warned the players on the 15th hole of the dangers of players at the 16th tee. Plaintiff's first suggestion poses significant practical problems since the use of parallel or contiguous holes recurs throughout a typical golf course, but the second suggestion is feasible. However, both of these suggestions assume, incorrectly, that plaintiff was not adequately warned of the ordinary risk of being endangered by a poorly hit golf ball.
Several factors contradict this assumption. First, plaintiff had actual knowledge that defendant Thibodaux's foursome was ahead of him on the 16th tee. Second, the parallel or contiguous nature of these two holes was visually apparent and represented a typical arrangement in the design of a golf course. Third, as Murphy, supra noted the risk of being struck by an errant shot hit by a player on a contiguous or adjacent fairway is "a risk all golfers must accept". Last, defendant Thibodaux's foursome gave the traditional "fore" warning.
In this regard defendant Timberlane benefits from the fact that defendant Thibodaux was not negligent. This is clearly demonstrated by Petrich v. New Orleans City Park Improvement Association, 188 So. 199 (La.App.1939):
... the universally recognized custom and rule required each golfer to give warning before driving a ball into the direction of someone else on the course, and the Association was justified in assuming that each golfer would recognize and obey this custom. Were a golf course operator not justified in assuming that all golfers would comply with this rule, there might be liability in permitting more than one golfer to play on any one course at one time.
(188 So. at 201).

Petrich indicates that the operator of a golfing facility is justified in relying on its players to comply with the universal warning custom. This has important implications in light of the finding, supra that defendant Thibodaux discharged his duty to a non-companion player.
Consequently, the court finds that the premises were reasonably safe for their intended use and that the risk of being hit by an erratic golf ball is an ordinary risk not a hidden peril requiring correction or a specific warning. Additionally, Timberlane was justified in relying upon all of its golfers to give warnings commensurate with the differing duties owed to companion and non-companion players.
We agree with this reasoning. We likewise believe, for the reasons cited above, that plaintiff has not proven that the course contained a vice or defect so as to render Timberlane liable under the provisions of LSA-C.C. art. 2317. Accordingly, we agree with the trial court's ruling that Timberlane was not negligent.
Finally, Baker argues that the doctrine of res ipsa loquitur should have been applied so as to raise a presumption of negligence on the part of Thibodaux.

*250 "Louisiana courts have consistently held that to utilize the doctrine of res ipsa loquitur the plaintiff must show that (1) the accident is of a kind that does not ordinarily occur in the absence of negligence, (2) the injury was caused by an agency or instrumentality within the actual or constructive control of the defendant, and (3) evidence of the real cause of the accident is more readily accessible to the defendant. See 25 La. L.Rev. 748."
Holman v. Reliance Ins. Companies, 414 So.2d 1298, 1305 (La.App. 2nd Cir. 1982), writ denied, 420 So.2d 164 (La. 1982).
For the reasons stated above, we do not believe that plaintiff has proven either that the defendants herein were negligent or that the accident is of a kind that does not ordinarily occur in the absence of negligence. We believe, therefore, that the doctrine of res ipsa loquitur was not applicable.
For the foregoing reasons, the decision of the lower court is affirmed.
AFFIRMED.