592 S.E.2d 326

**Wayne SCHMIDT and Terri J. Schmidt, Appellants,**

v.

**Michael C. COURTNEY and Kemper Sports of Crowfield, Inc. d/b/a Crowfield Golf & Country Club and Westvaco Development Corporations, Of Whom Kemper Sports of Crowfield, Inc. d/b/a Crowfield Golf & Country Club, is, Respondent.**

No. 3719.

Court of Appeals of South Carolina.

Heard Dec. 9, 2003.

Decided Dec. 22, 2003.

Rehearing Denied Feb. 20, 2004.

312

Joseph F. Kent, of Mt. Pleasant, for Appellants.

Stephen E. Darling and C. Bowen Horger, II, of Charleston, for Respondent.

ANDERSON, J.:

Wayne Schmidt (Schmidt) and Terri J. Schmidt initiated a negligence action against Michael Courtney for injuries Schmidt sustained when he was struck in the head by a golf ball while roofing a house located adjacent to a golf course. Kemper Sports of Crowfield, Inc. (Kemper Sports) was later joined on claims of negligent design, operation, and maintenance of the golf course. The circuit court judge granted Kemper Sports' motion for summary judgment. Schmidt appeals. We reverse and remand.

## FACTS/PROCEDURAL BACKGROUND

On August 27, 1998,[1] Schmidt was roofing a house located at 113 Waveney Circle in the Hamlets section of the Crowfield Development in Goose Creek, South Carolina. The home is adjacent to the Crowfield Golf and Country Club, which is owned and operated by Kemper Sports. Several oak trees stand between the house and golf course.

While Schmidt was roofing, Courtney was playing golf at the Crowfield Golf and Country Club. When Courtney made his tee shot on the Number 11 fairway, he hooked his ball, causing it to fly out of the boundaries of the course and over to the house where Schmidt was working. The golf ball struck Schmidt in the back of his head and knocked him unconscious. A fellow worker caught Schmidt and prevented him from falling off the roof. Schmidt suffered permanent brain damage from the injury and has been unable to work since the accident.

Schmidt initially filed a negligence suit against Courtney. Schmidt later joined Kemper Sports in the action, alleging negligent design, construction, operation, and maintenance of the golf course. After filing its answer, Kemper Sports then moved for summary judgment.

At the summary judgment hearing, Schmidt's counsel, Joseph F. Kent, presented information regarding an expert witness he located on May 7, 2002, just a few weeks after Kent received notice of the motion for summary judgment. The expert witness, Gerald W. Pirkl, specializes in golf course safety, design, and maintenance. Kent professed: "We were very long in finding this gentleman, Your Honor. I believe that before the case is over that it is going to turn out that Mr. Pirkl is the most experienced person by way of expert witnesses in this area." Kent requested the court consider his affidavit which identified Pirkl and set forth what Pirkl would likely state during testimony. In his affidavit, Kent declared:

1. The order of the circuit judge, as well as the first and second amended complaints, reference August 27, 1998, as the date Schmidt was hit by the errant golf ball. However, the Appellants' brief and the Respondent's brief provide that August 28, 1998, was the date Schmidt was injured.

I, Joseph F. Kent, counsel for the Plaintiffs in this action, having been duly sworn do depose and state as a proffer of evidence in this case, as follows:

1. Full and complete diagnosis of the closed head brain injuries sustained by Wayne Schmidt while working at the residence known as 113 Waveney was not accomplished until about the first of December 1999.

2. Counsel knows of no cases in this jurisdiction concerning the liability for negligent golf course design, maintenance or operation.

3. Counsel has found relatively few cases arising in the country from claims of negligent golf course design, maintenance or operation resulting in personal injuries to innocent parties outside of the bounds and property of golf courses.

4. Counsel has testimony of experienced golfers and an expert in the design of golf courses that foreseeable fields of play for tee shots often extend beyond the bounds of certain fairway boundaries and that such an extended field of play was foreseeable for the fairway and tee boxes in this case.

5. Counsel has retained an expert in golf course design, Gerald W. Pirkl, of Dana Point, California who counsel believes will testify that the design of the fairway and tee boxes in this case bring the house at 113 Waveney Circle into a foreseeable area of play as counsel understands that area to be defined by the United States Golf Association.

6. Counsel believes that the constructed contour and topography of the fairway in this case eliminates or substantially reduces the opportunity to play a first shot on the subject hole on the design centerline of the fairway.

7. Counsel believes that the said expert will further testify that tee shots from the most distant tee box position at the fairway in question reduces the available shot angle for fairway center line both as that line was designed and perceived by golfers in the tee boxes.

8. Counsel believes that the evidence in this case will be that together with the house location of the house in the predictable field of play for this fairway, that the golf course operator failed to provide adequate screening or fairway map information to reasonably guard and protect against

innocent parties outside of the golf course coming within the predictable flight of tee shots from the fairway in this case.

9. Counsel has already begun to shoot aerial photographs of the subject fairway and tee boxes necessary for a written opinion with specifications concerning the deficiencies of the design, maintenance and operation of the Defendant Kemper in this case.

10. Counsel anticipates a first written report from his expert landscape architect within about two weeks and supplemental discovery responses of aerial photography on May 13, 2002.

Kent explained that he expected a final report from Pirkl "before the end of th[e] month." The judge determined the issue of the expert witness was not before the court because Kent did not timely file the affidavit.

The circuit judge granted Kemper Sports' motion for summary judgment. Schmidt filed a motion to reconsider, which the court denied.

### STANDARD OF REVIEW

When reviewing the grant of a summary judgment motion, the appellate court applies the same standard which governs the trial court under Rule 56(c), SCRCP: summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Laurens Emergency Med. Specialists v. M.S. Bailey & Sons Bankers*, 355 S.C. 104, 584 S.E.2d 375 (2003); *Fleming v. Rose*, 350 S.C. 488, 567 S.E.2d 857 (2002); *Regions Bank v. Schmauch*, 354 S.C. 648, 582 S.E.2d 432 (Ct.App.2003); *Redwend Ltd. P'ship v. Edwards*, 354 S.C. 459, 581 S.E.2d 496 (Ct.App.2003). In determining whether any triable issue of fact exists, the evidence and all inferences which can reasonably be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Sauner v. Public Serv. Auth.*, 354 S.C. 397, 581 S.E.2d 161 (2003); *Hendricks v. Clemson Univ.*, 353 S.C. 449, 578 S.E.2d 711 (2003); *McNair v. Rainsford*, 330 S.C. 332, 499 S.E.2d 488 (Ct.App.1998); *see also Laurens Emergency Med. Specialists*, 355 S.C. at 108, 584 S.E.2d at 377 (stating that in reviewing summary judgment motion, facts and circumstances must be viewed in light

most favorable to non-moving party). If triable issues exist, those issues must go to the jury. *Baril v. Aiken Reg'l Med. Ctrs.*, 352 S.C. 271, 573 S.E.2d 830 (Ct.App.2002); *Young v. South Carolina Dep't of Corrections*, 333 S.C. 714, 511 S.E.2d 413 (Ct.App.1999).

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Russell v. Wachovia Bank, N.A.*, 353 S.C. 208, 578 S.E.2d 329 (2003); *Regions Bank*, 354 S.C. at 659, 582 S.E.2d at 438; Rule 56(c), SCRCP. All ambiguities, conclusions, and inferences arising from the evidence must be construed most strongly against the moving party. *Bayle v. South Carolina Dep't of Transp.*, 344 S.C. 115, 542 S.E.2d 736 (Ct.App.2001); *see also Ferguson v. Charleston Lincoln Mercury, Inc.*, 349 S.C. 558, 563, 564 S.E.2d 94, 96 (2002) ("On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the non-moving party below.").

Under Rule 56(c), SCRCP, the party seeking summary judgment has the initial burden of demonstrating the absence of a genuine issue of material fact. *Regions Bank*, 354 S.C. at 659, 582 S.E.2d at 438; *Trivelas v. South Carolina Dep't of Transp.*, 348 S.C. 125, 558 S.E.2d 271 (Ct.App.2001). Once the party moving for summary judgment meets the initial burden of showing an absence of evidentiary support for the opponent's case, the opponent cannot simply rest on mere allegations or denials contained in the pleadings. *Regions Bank*, 354 S.C. at 660, 582 S.E.2d at 438. Rather, the nonmoving party must come forward with specific facts showing there is a genuine issue for trial. *SSI Med. Servs., Inc. v. Cox*, 301 S.C. 493, 392 S.E.2d 789 (1990); *Peterson v. West American Ins. Co.*, 336 S.C. 89, 518 S.E.2d 608 (Ct.App.1999); Rule 56(c), SCRCP. The purpose of summary judgment is to expedite disposition of cases which do not require the services of a fact finder. *Dawkins v. Fields*, 354 S.C. 58, 580 S.E.2d 433 (2003); *George v. Fabri*, 345 S.C. 440, 548 S.E.2d 868 (2001).

## LAW/ANALYSIS

Schmidt argues the trial court erred in granting summary judgment to Kemper Sports on this novel claim prior to the opportunity for full and fair discovery. We agree.

### I. CONTINUANCE

Kemper Sports alleges in its brief that Schmidt's counsel failed to request a continuance to develop documentation in opposition to summary judgment. Although Kent did not specifically ask for a continuance, it is clear from the transcript of the hearing the trial judge was fully aware of the importance of having expert testimony for this case, and that Kent had recently located a qualified expert. The judge stated: "As a general rule, we've got to establish all aspects of this case through expert testimony." Then, instead of asking Kent if he would like to move for a continuance, the trial judge directed his query to Kemper Sports' attorney, Stephen E. Darling. The judge, referring to the affidavit prepared by Kent which contained the expert witness information, questioned Darling: "Do you—out of an abundance of caution, do you want to allow it to be heard or continue the Motion?" Darling responded: "No, sir." This dialogue suggests the trial court understood Kent, as counsel for Schmidt, desired a continuance to obtain the expert's affidavit but refused to grant him one because Darling, as counsel for Kemper Sports, objected to the motion being continued to a later date.

### II. SUMMARY JUDGMENT

We find it extremely troubling this case was resolved on a summary judgment basis, especially considering the injury to Schmidt and the *novel* issue involved in this case. No South Carolina cases discuss the issue of personal injury from the impact of errant golf shots.

Many South Carolina cases point out summary judgment is a "drastic remedy" which should be cautiously invoked so no person will be improperly deprived of a trial of the disputed factual issues. *Cunningham v. Helping Hands, Inc.*, 352 S.C. 485, 575 S.E.2d 549 (2003); *Lanham v. Blue Cross & Blue Shield*, 349 S.C. 356, 563 S.E.2d 331 (2002); *Conner v. City of Forest Acres*, 348 S.C. 454, 560 S.E.2d 606 (2002); *Redwend*

*Ltd. P'ship v. Edwards,* 354 S.C. 459, 581 S.E.2d 496 (Ct.App. 2003); *Baril v. Aiken Reg'l Med. Ctrs.,* 352 S.C. 271, 573 S.E.2d 830 (Ct.App.2002); *Trivelas v. South Carolina Dep't of Transp.,* 348 S.C. 125, 558 S.E.2d 271 (Ct.App.2001); *Murray v. Holnam, Inc.,* 344 S.C. 129, 542 S.E.2d 743 (Ct.App.2001); *McNair v. Rainsford,* 330 S.C. 332, 499 S.E.2d 488 (Ct.App. 1998). Because summary judgment is a drastic remedy, it must not be granted until the opposing party has had a "full and fair opportunity to complete discovery." *Dawkins v. Fields,* 354 S.C. 58, 69, 580 S.E.2d 433, 439 (2003); *Lanham,* 349 S.C. at 363, 563 S.E.2d at 334; *Doe v. Batson,* 345 S.C. 316, 322, 548 S.E.2d 854, 857 (2001); *Baird v. Charleston County,* 333 S.C. 519, 529, 511 S.E.2d 69, 74 (1999); *Baughman v. American Tel. & Tel. Co.,* 306 S.C. 101, 112, 410 S.E.2d 537, 543 (1991).

Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law. *Lanham,* 349 S.C. at 362, 563 S.E.2d at 333; *Moriarty v. Garden Sanctuary Church of God,* 341 S.C. 320, 534 S.E.2d 672 (2000); *Mosteller v. County of Lexington,* 336 S.C. 360, 520 S.E.2d 620 (1999); *Redwend Ltd. P'ship,* 354 S.C. at 468, 581 S.E.2d at 501; *Baril,* 352 S.C. at 280, 573 S.E.2d at 835; *Trivelas,* 348 S.C. at 130, 558 S.E.2d at 273; *Hall v. Fedor,* 349 S.C. 169, 561 S.E.2d 654 (Ct.App.2002); *Hedgepath v. American Tel. & Tel. Co.,* 348 S.C. 340, 559 S.E.2d 327 (Ct.App.2001); *Bayle v. South Carolina Dep't of Transp.,* 344 S.C. 115, 542 S.E.2d 736 (Ct.App.2001); *Vermeer Carolina's, Inc. v. Wood/Chuck Chipper Corp.,* 336 S.C. 53, 518 S.E.2d 301 (Ct.App.1999); *Middleborough Horizontal Prop. Regime Council v. Montedison,* 320 S.C. 470, 465 S.E.2d 765 (Ct.App.1995). "Summary judgment is inappropriate when further development of the facts is desirable to clarify the application of the law." *Lee v. Kelley,* 298 S.C. 155, 158, 378 S.E.2d 616, 617 (Ct.App.1989). Even when there is no dispute as to evidentiary facts, but only as to the conclusions or inferences to be drawn from them, summary judgment should be denied. *Redwend Ltd. P'ship,* 354 S.C. at 468, 581 S.E.2d at 501; *Baril,* 352 S.C. at 280, 573 S.E.2d at 835; *Hall,* 349 S.C. at 173–74, 561 S.E.2d at 656; *Glasscock, Inc. v. United States Fid. & Guar. Co.,* 348 S.C. 76, 557 S.E.2d 689 (Ct.App.2001); *Stewart v. State Farm Mut. Auto. Ins. Co.,* 341

S.C. 143, 533 S.E.2d 597 (Ct.App.2000); *see also Laurens Emergency Med. Specialists v. M.S. Bailey & Sons Bankers,* 355 S.C. 104, 584 S.E.2d 375 (2003) (noting that summary judgment should not be granted even when there is no dispute as to evidentiary facts, if there is dispute as to conclusions to be drawn therefrom). Although the facts regarding Schmidt's injury are not disputed, application of the law to the facts is disputed, and is a *novel* issue.

Rule 56(f), SCRCP, provides:

> **When Affidavits Are Unavailable.** Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such order as is just.

Our Supreme Court, in *Doe v. Batson,* 345 S.C. 316, 548 S.E.2d 854 (2001), discussed the efficacy of Rule 56(f):

> Rule 56(f) applies when it appears *"from the affidavits* of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition." Rule 56(f), SCRCP (emphasis added). In such a case, "the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such order as is just." *Id.* Thus, Rule 56(f) requires the party opposing summary judgment to at least present affidavits explaining why he needs more time for discovery.

*Id.* at 321, 548 S.E.2d at 857. The affidavit submitted by Kent is a Rule 56(f) paradigmatic affidavit.

The analysis of Rule 56(f) as juxtaposed to the factual scenario in this case involves whether:

(1) the word "party" encompasses an "attorney";

(2) the affidavit is conclusory;

(3) the two-day rule as articulated in Rule 56(c) does **NOT** apply to a Rule 56(f) affidavit; and

(4) the judge abused his discretion because he did not consider the affidavit.

## Party/Attorney

■ The rule utilizes the word "party" as the entity filing the affidavit under Rule 56(f). Schmidt asserts that the rule allows for an affidavit to be submitted by the attorney. In the instant case, the attorney is intimately familiar with the reasons and justification for being unable to file an affidavit of the expert witness. Clearly, the attorney is in the best position to file this affidavit rather than a party filing the affidavit on information provided by the attorney.

We conclude that Rule 56(f) does allow and permit an "attorney" to file an affidavit averring "that he cannot for reasons stated present by affidavit facts essential to justify his opposition." This construction is consonant with the expressed intent of the rule to provide a procedure "[w]hen [a]ffidavits [a]re [u]navailable."

## Affidavit/Conclusory

■ A review of the affidavit filed by Kent reveals gargantuan specificity of facts and circumstances. There is nothing in the affidavit that falls within the definition of "conclusory."

## Rule 56(c)/Rule 56(f)

■ Kemper Sports argues that the Kent affidavit was untimely because it did not comply with the two-day rule mandated by Rule 56(c). We reject this contention. The etymological format of Rule 56 demonstrates that a time limit application is neither proper nor justified.

## Abuse of Discretion

■ At the conclusion of the summary judgment hearing, the judge found:

[T]he affidavit has been reviewed. *The Court finds that it was not timely submitted. ... But, primarily, the Court doesn't have to get there because there's no affidavit that's been filed timely, pursuant to the Rules. ... You didn't file it timely. It's that simple.*

A circuit court's failure to exercise discretion is itself an abuse of discretion. *In re Robert M.*, 294 S.C. 69, 362 S.E.2d 639 (1987); *State v. Smith*, 276 S.C. 494, 280 S.E.2d 200 (1981); *Fields v. Regional Med. Ctr. Orangeburg*, 354 S.C.

445, 581 S.E.2d 489 (Ct.App.2003); *State v. Mansfield,* 343 S.C. 66, 538 S.E.2d 257 (Ct.App.2000); *Balloon Plantation, Inc. v. Head Balloons, Inc.,* 303 S.C. 152, 399 S.E.2d 439 (Ct.App.1990). Here, the circuit court failed to exercise discretion. *See Samples v. Mitchell,* 329 S.C. 105, 112, 495 S.E.2d 213, 216 (Ct.App.1997) ("When the trial judge is vested with discretion, but his ruling reveals no discretion was, in fact, exercised, an error of law has occurred."); *Balloon Plantation,* 303 S.C. at 155, 399 S.E.2d at 441 ("It is an equal abuse of discretion to refuse to exercise discretionary authority when it is warranted as it is to exercise the discretion improperly."). The judge was mandatorily required to at least evaluate and consider the affidavit.

█ The non-moving party in a motion for summary judgment "must demonstrate the likelihood that further discovery will uncover additional relevant evidence and that the party is not merely engaged in a fishing expedition." *Dawkins v. Fields,* 354 S.C. 58, 69, 580 S.E.2d 433, 439 (2003) (internal quotation marks omitted). In *Baughman v. American Tel. & Tel. Co.,* 306 S.C. 101, 410 S.E.2d 537 (1991), the plaintiffs brought an action against a refinery operator, alleging personal injury caused by pollution from the refinery. Based on an opinion letter by an expert that the injuries were consistent with exposure to toxic substances, our Supreme Court ruled the trial judge's grant of summary judgment was premature because further discovery, such as testing and analysis of the medical conditions, would likely reveal additional relevant evidence. *Id.* at 112–13, 410 S.E.2d at 544.

Similarly, Kent's assertions at the hearing regarding the need for Pirkl's expert opinion, and the judge's statement that expert testimony must be used in this case, demonstrate the need for further discovery.

In finding summary judgment was premature, the *Baughman* Court considered the fact that the plaintiffs "were not dilatory in seeking discovery ... but have been reasonably diligent in pursuit of a qualified expert to substantiate their claims." *Id.* at 113, 410 S.E.2d at 544. The Court referenced the plaintiffs' inability to obtain satisfactory responses to their interrogatories, as well as the overall complexity of the case, which contributed to the difficulty in finding an expert. *Id.*

The trial judge in the present case did not feel Kent was "dilatory" in finding Pirkl. As in *Baughman*, Schmidt did not receive responses to his discovery requests. In addition, the unusual facts of the case made it difficult to locate an appropriate expert. Kent declared that Pirkl, who resides in California, "has only had a website for a few months ... [and he] didn't know of [Pirkl] but since the beginning of last week."

In *Middleborough Horizontal Prop. Regime Council v. Montedison*, 320 S.C. 470, 465 S.E.2d 765 (Ct.App.1995), Montedison contended the trial court's grant of summary judgment was inappropriate inasmuch as it did not have a full and fair opportunity to conduct discovery. This Court disagreed:

> Montedison advances no good reason why four months was insufficient time ... to develop documentation in opposition to the motion for summary judgment.... Further, the record discloses Montedison made no formal motion for a continuance or pointed out in any specific manner how it would be prejudiced by its inability to conduct discovery.

*Id.* at 479–80, 465 S.E.2d at 771.

In contrast, Kent asserted the difficulty in finding an expert on golf course design and highlighted the inability to obtain responses to discovery requests. Kent pointed out it would be prejudicial to grant summary judgment on this *novel* issue when he had an expert ready to testify.

■ Because this is a negligence claim, it is important to note that, "[g]enerally, negligence claims are not susceptible of summary adjudication because of the many questions normally present in such cases concerning the reasonableness of a party's conduct, foreseeability, and proximate cause." *Folkens v. Hunt*, 290 S.C. 194, 199, 348 S.E.2d 839, 842 (Ct.App. 1986). Concomitantly, we reverse the grant of summary judgment.

## III.  NEGLIGENCE

■ At the time the trial court prematurely granted summary judgment, a genuine issue of material fact existed as to the negligence of Kemper Sports.

■ In a negligence action, a plaintiff must show the (1) defendant owes a duty of care to the plaintiff; (2) defendant breached the duty by a negligent act or omission; (3) defendant's breach was the actual and proximate cause of the plaintiff's injury; and (4) plaintiff suffered an injury or damages. *Andrade v. Johnson*, 356 S.C. 238, 588 S.E.2d 588 (2003); *Sabb v. South Carolina State Univ.*, 350 S.C. 416, 567 S.E.2d 231 (2002); *Thomasko v. Poole*, 349 S.C. 7, 561 S.E.2d 597 (2002); *Steinke v. South Carolina Dep't of Labor, Licensing and Regulation*, 336 S.C. 373, 520 S.E.2d 142 (1999); *Regions Bank v. Schmauch*, 354 S.C. 648, 582 S.E.2d 432 (Ct.App.2003); *see also Trivelas v. South Carolina Dep't of Transp.*, 348 S.C. 125, 558 S.E.2d 271 (Ct.App.2001) (amplifying that elements for negligence cause of action are: (1) duty of care owed by defendant to plaintiff; (2) defendant's breach of that duty by negligent act or omission; and (3) damages to plaintiff proximately resulting from breach of duty).

■ To sustain an action for negligence, it is essential the plaintiff demonstrate the defendant breached a duty of care owed to the plaintiff. *Sabb*, 350 S.C. at 429, 567 S.E.2d at 237; *Bishop v. South Carolina Dep't of Mental Health*, 331 S.C. 79, 502 S.E.2d 78 (1998); *Parks v. Characters Night Club*, 345 S.C. 484, 548 S.E.2d 605 (Ct.App.2001). Generally, duty is defined as the obligation to conform to a particular standard of conduct toward another. *Huggins v. Citibank, N.A.*, 355 S.C. 329, 585 S.E.2d 275 (2003); *Shipes v. Piggly Wiggly St. Andrews, Inc.*, 269 S.C. 479, 238 S.E.2d 167 (1977); *Hubbard v. Taylor*, 339 S.C. 582, 529 S.E.2d 549 (Ct.App.2000). The existence of a duty owed is a question of law for the courts. *Doe v. Batson*, 345 S.C. 316, 548 S.E.2d 854 (2001); *Washington v. Lexington County Jail*, 337 S.C. 400, 523 S.E.2d 204 (Ct.App.1999). In a negligence action, if no duty exists, the defendant is entitled to judgment as a matter of law. *Huggins*, 355 S.C. at 332, 585 S.E.2d at 277; *Simmons v. Tuomey Reg'l Med. Ctr.*, 341 S.C. 32, 533 S.E.2d 312 (2000).

Kemper Sports maintains it did not owe Schmidt a duty. Kemper Sports relies on the proposition that golf courses are not liable to those injured by errant golf shots as long as the course is not unreasonably unsafe. A common theme runs throughout the cases cited by Kemper Sports. The cases involve injury to fellow golfers.

For example, in *Campion v. Chicago Landscape Co.*, 295 Ill.App. 225, 14 N.E.2d 879 (1938), a golfer was injured when another golfer hooked his ball, causing it to come into the fairway where the plaintiff was standing and strike him in the eye. The court explained: "Persons operating any golf course may reasonably expect that because of the somewhat dangerous nature of the game, accidents may occur at any time; but to subject them to liability for such an accident would make them insurers of all *players* on the course. This is not the law." *Id.* at 883 (emphasis added). The operative word in the court's statement is "players." Because the *Campion* case involved another *player* being injured, it is not comparable to the facts of the instant case.

In *Petrich v. New Orleans City Park Improvement Ass'n*, 188 So. 199 (La.Ct.App.1939), the plaintiff was playing golf when a ball driven from a nearby tee struck and injured her. The court held: "[T]he universally recognized custom and rule required each golfer to give warning before driving a ball into the direction of someone else on the course, and the [golf course operator] was justified in assuming that each *golfer* would recognize and obey this custom." *Id.* at 201 (emphasis added). The *Petrich* court emphasized the fact that the plaintiff was a golfer, suggesting she assumed the risk of injury.

*Trauman v. City of New York*, 208 Misc. 252, 143 N.Y.S.2d 467 (N.Y.Sup.Ct.1955), cited by Kemper Sports, involved an action by a golfer. In contrariety, the case *sub judice* involves a third party on adjacent premises.

Likewise, in *Baker v. Thibodaux*, 470 So.2d 245 (La.Ct.App. 1985), a golfer brought an action against the golf club and another golfer for injuries sustained when he was struck in the eye by a golf ball. The court observed that the plaintiff, who was playing the 15th hole at the time of the accident, had actual knowledge the defendant was ahead of him on the 16th tee. *Id.* at 249. The court noted: "[T]he risk of being struck by an errant shot hit by a player on a contiguous or adjacent fairway is 'a risk all *golfers* must accept.'" *Id.* (emphasis added). The facts of *Baker* differ substantially from those in the case at bar. *Baker* stands for the proposition that *golfers* assume the risk.

In contrast to these cases involving golfer-plaintiffs, Schmidt was not playing golf at the time he was struck by the golf ball. In fact, Schmidt testified he does not play golf at all. Additionally, Schmidt stated during the time he worked on the house, he never saw "any other golf balls come near [him]." Thus, it would be error to conclude Schmidt assumed the risk of being struck by a golf ball. There was no reason to believe a golf ball would strike him while he was roofing the house.

■ In addition to the requirement that Schmidt prove the existence and breach of a duty, Schmidt must show that Kemper Sports' negligence was the proximate cause of Schmidt's injury. *See Bishop v. South Carolina Dep't of Mental Health,* 331 S.C. 79, 502 S.E.2d 78 (1998); *Regions Bank v. Schmauch,* 354 S.C. 648, 582 S.E.2d 432 (Ct.App. 2003). To prove causation, a plaintiff must demonstrate both causation in fact and legal cause. *Trivelas v. South Carolina Dep't of Transp.,* 348 S.C. 125, 558 S.E.2d 271 (Ct.App.2001); *Parks v. Characters Night Club,* 345 S.C. 484, 548 S.E.2d 605 (Ct.App.2001); *Vinson v. Hartley,* 324 S.C. 389, 477 S.E.2d 715 (Ct.App.1996). Causation in fact is proved by establishing the plaintiff's injury would not have occurred "but for" the defendant's negligence. *Trivelas,* 348 S.C. at 136, 558 S.E.2d at 276; *McNair v. Rainsford,* 330 S.C. 332, 499 S.E.2d 488 (Ct.App.1998). This Court, in *Trivelas,* summarized the law regarding legal cause:

Legal cause turns on the issue of foreseeability. An injury is foreseeable if it is the natural and probable consequence of a breach of duty. Foreseeability is not determined from hindsight, but rather from the defendant's perspective at the time of the alleged breach. It is not necessary for a plaintiff to demonstrate the defendant should have foreseen the particular event which occurred but merely that the defendant should have foreseen his or her negligence would probably cause injury to someone.

*Id.* at 136, 558 S.E.2d at 276 (internal citations and quotations omitted).

Because we find further discovery, especially expert testimony, is essential to determine whether: (1) Kemper Sports owed a duty to Schmidt and (2) Kemper Sports' negligence

was the proximate cause of Schmidt's injury, the grant of summary judgment is reversed.

## CONCLUSION

Although Kent did not specifically ask for a continuance, it is obvious the trial judge understood the need for expert testimony in this case. In totality, we come to the ineluctable conclusion that genuine issues of material fact exist in regard to the existence of any duty owed by Kemper Sports to Schmidt and whether negligence on the part of Kemper Sports was the proximate cause of Schmidt's injury. Because additional discovery, especially in the form of expert opinion, is needed to determine these issues, the trial court erred in granting Kemper Sports' motion for summary judgment. Accordingly, the decision of the trial judge is

**REVERSED and REMANDED.**

GOOLSBY, J., and CURETON, A.J., concur.