2429

MIDDLEBOROUGH HORIZONTAL PROPERTY REGIME COUNCIL OF CO-OWNERS, Respondent v. MONTEDISON S.p.A., Montedison USA, Inc., Flag S.A.S., Watpro, Inc., and Flex Membrane International Corp., successor to Watpro, Inc., Middleborough, a Limited Partnership, Howard G. Love, Love & Cobb, Architects, Incorporated, n/k/a A Touch of Country, Inc., Southeastern Waterproofing Company, Inc., RELM, Inc. and William J. Cleary, Defendants, of whom: Montedison S.p.A., Montedison USA, Inc., are Appellants, and Howard G. Love, Love & Cobb, Architects, Incorporated, n/k/a A Touch of Country, Inc., are Respondents.

(465 S.E. (2d) 765)

Court of Appeals

*William L. Pope* and *Roy F. Laney,* Columbia, *for appellants.*

*Warren C. Powell, Jr.* and *Ronald E. Robbins, Bruner & Powell;* and *Evans Taylor Barnette,* of *Whaley, McCutchen, Blanton & Rhodes,* Columbia, *for respondents.*

Heard Oct. 3, 1995.

Decided Dec. 11, 1995; Reh. Den. Jan. 25, 1996.

CURETON, Judge:

Respondent, Middleborough Horizontal Property Regime Council of Co-owners (the Regime),[1] instituted this action against appellants, Montedison S.p.A. and Montedison USA, Inc. (referred to collectively as Montedison) and others, for damages sustained as a result of defective roofing materials installed on the condominiums. The Regime alleged several causes of action including negligence, breach of implied warranty, breach of express warranty, strict liability in tort,

---

[1] The Regime brought this action in its capacity as representative of the individual owners of Middleborough condominium units.

breach of warranty accompanied by fraudulent conduct, and violation of the Unfair Trade Practices Act. Prior to trial, the court granted the Regime's motion for partial summary judgment as to liability against Montedison on the ground of nonmutual offensive collateral estoppel. Montedison appeals. We affirm in part, reverse in part and remand.

*Facts and Procedural History*

Montedison S.p.A. is an Italian chemical corporation. Montedison USA, Inc. is a wholly owned subsidiary of Montedison S.p.A. and markets certain Montedison S.p.A. chemical products in the United States. During the period relevant to this action, Montedison engaged in the research, development, and production of polyvinylcholoride (PVC). Flag S.A.S. (Flag), an Italian corporation formed by former Montedison employees, purchased the raw PVC in pellet form from Montedison. Flag processed the PVC pellets into vinyl sheets of waterproofing material called Flagon C and Flagon SF under the direction and control of Montedison. The Flagon materials were rolled onto roofs in much the same manner as a carpet would be rolled onto a floor and were used to provide a watertight barrier on roofs. Watpro, a New Jersey corporation which is now bankrupt, distributed Flagon SF and Flagon C materials in the United States.

In 1981, Middleborough Apartments were converted into condominium units. As part of the conversion, the roof was replaced. Middleborough contracted with Love and Cobb Architects to provide architectural services related to the replacement of the roof, and with Southeastern Waterproofing Company, Inc. to install the roof.

After conferring with Love and Cobb, Southeastern decided to replace the roof using Flagon C materials. The new roof consisted of a 1½-inch layer of expanded polystyrene insulation placed over the existing roof, a layer of Flagon C roofing membrane, and a layer of washed river stones as ballast.[2]

On October 14, 1981, Flag issued two consecutive five-year written guarantees to Middleborough whereby it guaranteed

---

[2] Ballast is a layer of coarse gravel, crushed rock, or smooth stones laid to form a bed for the purpose, in this case, of "restraining" the roofing membrane.

"to maintain the Flagon roof . . . in a watertight condition." Within the warranty period, the roofing system failed, resulting in extensive water damage to the condominiums due to leakage. The Regime notified Southeastern, Watpro, and Flag of the leakage, but was unsuccessful in its attempts to have the roof repaired. Eventually, the Regime had the roof repaired at its own expense. The instant litigation ensued. .

Prior to trial, the Regime moved for partial summary judgment against Montedison as to liability. The motion was premised on the fact that "underlying issues regarding the role, responsibility, and liability for the development, production, and marketing of the roofing material which failed [had] been previously adjudicated against [Montedison]" who was collaterally estopped from relitigating those issues. In support of this argument, the Regime referred the trial court to the Minnesota Supreme Court's holding and findings of fact in *Church of the Nativity of Our Lord v. WatPro, Inc., Montedison S.p.A. and Montedison U.S.A. Inc., et al.*, 491 N.W. (2d) 1 (Minn. 1992), *aff'g* 474 N.W. (2d) 605 (Minn. Ct. App. 1991) wherein Montedison was found liable for damages resulting from a failed Flagon roof.

In opposition to the Regime's motion, Montedison argues summary judgment on the basis of offensive collateral estoppel was improper because the instant litigation involves issues which were not litigated in *Nativity*. Montedison also argued the trial court should not give collateral estoppel effect to the holding in *Nativity* because it is inconsistent with the holding in *Curtiss-Wright Corp. v. Rainbow Roofing, et al.*, No. L-35834-88, L-39567-88 (N.J. Super. Ct. Law Div. 1991), a subsequent action wherein Montedison was found not liable for a failed Flagon roof.

## Discussion

### I.

At the heart of Montedison's appellate arguments is its contention the trial court erred in granting the Regime's motion for partial summary judgment because issues relating to liability in this case have not been previously litigated. Specifically, Montedison contends, among other things, that the issue of whether or not the Flagon roof involved in this case was properly installed has never been litigated because the *Nativ-*

*ity* case did not involve a claim of improper installation. Montedison claims there exists evidence the Regime's roof failed because it was improperly installed on a building which exceeded the height limitations permitted by Flagon C specifications, whereas the *Nativity* adjudication did not involve claims of faulty installation. To establish that the failure in the Regime's roof may have been due to improper installation, Montedison referred the court to the deposition of Floyd Abrams, a certified roof consultant retained by the Regime. Abrams testified he inspected the roof and found it was improperly installed on a building higher than the manufacturer's specifications. Abrams also testified the roof was not properly ballasted. Although Abrams was unable to state with certainty a specific reason the roof failed, he opined that installing the Flagon roof on a structure higher than the manufacturer's specifications permitted could have caused the problems which occurred with the Middleborough roof.

The doctrine of nonmutual offensive collateral estoppel was adopted in this State by this court in *Beall v. Doe*, 281 S.C. 363, 315 S.E. (2d) 186 (Ct. App. 1984), and was confirmed as the law of this State by our Supreme Court in *South Carolina Prop. and Cas. Ins. Guar. Ass'n v. Wal-Mart Stores, Inc.*, 304 S.C. 210, 403 S.E. (2d) 625 (1991). Under the doctrine of offensive nonmutual collateral estoppel, a party may be prevented from relitigating issues actually determined in a prior action so long as the party estopped had a full and fair opportunity to litigate the issue in the first action and there are no circumstances which justify affording him an opportunity to retry the issue. *Beall*, 281 S.C. 363, 315 S.E. (2d) 186; *Roberts v. Recovery Bur., Inc.*, 316 S.C. 492, 450 S.E. (2d) 616 (Ct. App. 1994) (citing *McPherson v. South Carolina Dept. of Highways and Pub. Transp.*, 297 S.C. 303, 376 S.E. (2d) 780 (Ct. App. 1989)).

While it is true improper installation was not an issue in *Nativity*, we agree with the trial court that Montedison's agency relationship with Flag and Watpro and the question of the defectiveness of the Flagon material were litigated. In *Nativity*, Flag issued guarantees on a Flagon roof.[3]

[3] Aside from the names of the parties, square footage and dates identified in the guarantees, the guarantees issued to the Regime are identical to those issued to the Church in the *Nativity* case.

The *Nativity* court found an agency relationship existed between Montedison and Flag as well as between Montedison and Watpro. The *Nativity* court further found that all of Flag's and Watpro's activities relevant in *Nativity,* including the issuance of guarantees, fell within the scope of their agency relationship with Montedison. Montedison is precluded, therefore, from denying its agency relationship with Flag and Watpro for purposes of having issued the guarantees on the Regime's roof.

We further hold Montedison is precluded from relitigating issues concerning defects in the Flagon material. The *Nativity* court held the Flagon materials[4] installed on the Church's roof were defective due to an improper chemical formulation which causes plastercizer migration. Because Montedison does not claim the Flagon C material installed on the Middleborough roof is any different from the Flagon C material installed on the *Nativity* roof, Montedison is estopped from denying the product is defective.

## II.

Montedison also maintains the trial court erred in giving preclusive effect to the *Nativity* decision because that decision is inconsistent with the *Curtiss-Wright* decision. Montedison argues that under the doctrine of *res judicata,* when two inconsistent final judgments are rendered, the latter judgment is accorded conclusive effect in a third action. Restatement (Second) of *Judgments* § 15 (1982). While these are correct statements of law, we cannot under the facts of this case determine the applicability of *Curtiss-Wright.* The text of the *Curtiss-Wright* decision was neither introduced into the trial record, nor included in the record on appeal. Therefore, no competent evidence exists from which we can glean the full implications of the decision.[5] *See State v. Thompson,* 305 S.C. 496, 409 S.E. (2d) 420 (Ct. App. 1991) (mere allegations of counsel do not constitute evidence); *Copeland v. Craig,* 193 S.C. 484, 8 S.E. (2d) 858 (1940) (court should not consider statutes or deci-

---

[4] As we read the trial court's order and the appellate court's opinion in *Nativity,* both the Flagon C and Flagon SF materials were found to be defective.

[5] As to the *Curtiss-Wright* decision, the record on appeal contains only pleadings, special interrogatories to the jury, and the jury's answers to those interrogatories.

sions of another state which have not been introduced into evidence); *accord American Nat'l Bank of Winter Haven, Fla. v. Caldwell,* 166 S.C. 194, 164 S.E. 613 (1932).

## III.

The trial court granted the Regime's motion for partial summary judgment based in part on its finding that even if the roof's failure was caused by defective installation of the Flagon material, the guarantee covered such installation. The guarantee provides, in pertinent part:

> Flag S.A.S. guarantees to maintain the Flagon roof of Middleborough . . . in a watertight condition at its own expense for a period of [ten years] provided that the owner gives WATPRO, INC., our exclusive agent, written notice of any leaks within 30 days from discovery of such leaks.
>
> . . . This guarantee is solely intended to cover any condition caused by defective Flagon brand material produced with compounds made by and under the supervision and control of Montedison, the installation or ordinary wear and tear thereof.

While conceding the guarantee warrants installation, Montedison, nevertheless, claims the guarantee is limited to the installation of defective Flagon material. Montedison postulates "the guarantee does not cover non-defective Flagon material. Therefore, if non-defective Flagon material failed because of improper installation there would be no coverage."

The construction and enforcement of an unambiguous contract is a question of law for the court, and thus can be properly disposed of at summary judgment. *Lyles v. BMI, Inc.,* 292 S.C. 153, 355 S.E. (2d) 282 (Ct. App. 1987). However, if a contract is ambiguous, or capable of more than one construction, the question of what the parties intended becomes one of fact, and should therefore be decided by the jury. *Cafe Assoc. Ltd. v. Gerngross,* 305 S.C. 6, 406 S.E. (2d) 162 (1991). Once a contract is before the court for interpretation, the paramount concern of the court is to give effect to the intention of the parties. *Parker v. Byrd,* 309 S.C. 189, 420 S.E. (2d) 850 (1992), *Columbia East Assoc. v. Bi-Lo, Inc.,* 299 S.C. 515, 386 S.E. (2d) 259 (Ct. App. 1989).

The trial court apparently found the guarantee unambiguous and warranted the installation of the Flagon brand material without regard to whether the material was defective or not. Because the installation of the Flagon material was not an issue in *Nativity*, that court necessarily did not construe the guarantee from the standpoint of whether the guarantee excluded the installation of non-defective Flagon material as contended by Montedison.[6] We fail to see how construction of the guarantee avails Montedison anything in view of the *Nativity* court's finding that Flagon is defective when considered in conjunction with Montedison's concession that the guarantee covers installation of defective materials. Nevertheless, Montedison argues defective material did not fail in this instance, but rather non-defective Flagon material failed because it was improperly installed. Such an argument inexorably must be premised on the assumption that non-defective Flagon material could have been installed on the Regime's roof. We fail to see how that is a possibility in view of the conclusive finding in *Nativity* that the Flagon material is defective. We therefore affirm the trial court's grant of partial summary judgment based on a breach of express warranty. Based on similar analysis, we also conclude the trial court did not err in finding a breach of implied warranty with respect to the Flagon material.[7]

---

[6] Montedison states in its brief:

> The Regime misinterprets the Flagon guarantee as blanket protection for improper installation. This interpretation ignores the term "defective" expressly stated in the guarantee. According to the Regime's interpretation, even if nothing was inherently wrong with the Flagon material and the Flagon was damaged by improper installation, then Flag would have nonetheless guaranteed the product. Such an interpretation is absurd as no manufacturer guarantees a product when it is improperly used.

[7] The trial court found a breach of implied warranty because the Flagon material "was not fit for its particular use on Middleborough's roof as it existed when Montedison's product was guaranteed on the Middleborough roof." We observe, however, that the finding of an express warranty precludes Middleborough from recovering also on an implied warranty touching on the same obligation of the parties. *Jones v. Winn-Dixie Greenville, Inc.,* — S.C. —, 456 S.E. (2d) 429 (Ct. App. 1995). Therefore, an election of remedies may be required at some point prior to entry of judgment.

## IV.

Nevertheless, we hold summary judgment was premature as to the cause of action in negligence. Summary judgment should be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56, SCRCP. The evidence and all inferences which can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Calvert v. House Beautiful Paint and Decorating Center, Inc.*, 313 S.C. 494, 443 S.E. (2d) 398 (1994). Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law. *Baugus v. Wessinger*, 303 S.C. 412, 401 S.E. (2d) 169 (1991). As we read the trial court's order in *Nativity*, the negligent misrepresentations made by Montedison's agents to the Church were wholly or partly oral having to do with the watertightness of the roof and the fact "the written guarantees would be honored." We cannot discern from the record whether oral misrepresentations made to the Regime in this case are the same as those made to the Church in *Nativity*. Under these circumstances, we find it was error to grant summary judgment as to liability on the negligence cause of action ad remand for further development of the facts as to that cause of action.[8]

## V.

Montedison finally argues the trial court's grant of summary judgment was inappropriate inasmuch as it did not have a full and fair opportunity to conduct discovery, citing *Baughman v. American Tele. and Tele. Co.*, 306 S.C. 101, 410 S.E. (2d) 537 (1991). We disagree. The Regime commenced this action on October 26, 1992, and filed its motion for summary judgment on February 8, 1993. The motion was heard on June 14, 1993. Although Montedison S.p.A. contested personal jurisdiction,[9] Montedison USA, Inc. did not. Montedison advances no good reason why four months was insufficient time under the facts of this case to develop docu-

---

[8] As with the implied warranty cause of action, an election of remedies may at some point be required to avoid double recovery.

[9] Montedison S.p.A. submitted to jurisdiction approximately one week prior to the hearing on the motion for summary judgment.

mentation in opposition to the motion for summary judgment. The Regime's motion had been rescheduled on at least three previous occasions. Thus, Montedison could not have been caught by surprise. Further, the record discloses Montedison made no formal motion for a continuance or pointed out in any specific manner how it would be prejudiced by its inability to conduct discovery.[10] Finally, we observe Montedison had been a party to other suits involving Flagon roofs that addressed most of the same issues involved in this case. For the foregoing reasons, the decision of the trial court is affirmed on this issue.

Affirmed in part, reversed in part and remanded.

GOOLSBY and HEARN, JJ., concur.

---

[10] The trial court found Montedison failed to comply with Rule 56(f), SCRCP in that it did not present affidavits showing reasons why it could not obtain necessary affidavits. Montedison responds in its brief that because "of the early stage of discovery, Montedison was not in a position to present affidavits as to why certain items of discovery were not available."