THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Litchfield Beaches Property Owners Association,
Appellant,
v.
The Thomas S. Cerasaro Qualified Personal Residence Trust Dated December 28, 2000,
Respondent.
 
 
 

Appeal From Georgetown County
 B. Hicks Harwell, Jr., Circuit Court Judge

Unpublished Opinion No. 2006-UP-236   
Heard April 5, 2006  Filed May 9, 2006 

REVERSED AND REMANDED

 
 
 
Jack M. Scoville, Jr., of Georgetown, for Appellant.
Robert J. Moran, of Murrells Inlet, for Respondent.
 
 
 

PER CURIAM:  The Litchfield Beaches Property Owners Association (Litchfield) brought this action alleging Thomas S. Cerasaro[1] constructed an addition to his oceanfront home in violation of a restrictive covenant establishing a setback line.  The trial court granted partial summary judgment to Cerasaro on the issue of the location of the setback line on his property as being measured one hundred (100) feet from the mean [high-water] mark of the Atlantic Ocean.  Litchfield appeals.  We reverse and remand.
FACTS
Litchfield is an unincorporated property owners association vested with the authority to enforce the restrictive covenants applicable to lots in the North Litchfield Beach subdivision in Georgetown County.  Cerasaro owns an oceanfront home on Lot 14, Section A of the subdivision.  Litchfield alleges Cerasaro constructed an addition to his home that violates a restrictive covenant establishing an oceanfront setback.  The parties dispute the actual location of the setback line.
The property Cerasaro now owns was once part of a larger, 45-acre  parcel purchased by North Litchfield Beach, Inc. from the Boyle family in 1959.  The deed to North Litchfield Beach, Inc. referred to a May 1959 plat prepared by Samuel M. Harper, R.L.S. and described the property by courses and distances, e.g., to the Atlantic Ocean; thence along the high[-]water mark of the Atlantic Ocean 6701 feet to the line of lands of International Paper Company, and by metes and bounds, e.g., Butting and Bounding to the North by lands of Brook Green Gardens, to the East and Southeast by the Atlantic Ocean.  Thus, the deed to North Litchfield Beach, Inc. conveyed the property to the high-water mark of the Atlantic Ocean.      
The deed excepted certain lots that the Boyle family had previously platted and sold.  All of the lots previously sold by the Boyle family, however, contained an area between the eastern boundary line and the Atlantic Ocean that was labeled, Sand Dunes.  These lots apparently were not conveyed to the high-water mark of the Atlantic Ocean.  
North Litchfield Beach, Inc. caused a subsequent subdivision plat, prepared by Samuel M. Harper dated December 1959 (the Harper Plat), to be recorded.  This document completed the subdivision of the property purchased from the Boyle family into multiple single-family lots.  The Harper Plat is filed in Plat Book O at Page 4.  
On January 22, 1960, North Litchfield Beach, Inc. conveyed Lot 14, Section A, the lot at issue here, to George Rowe Townsend.  The deed describes Lot 14-A as follows:

That certain lot of land situate, lying and being in the County of Georgetown and State of South Carolina, designated as Lot Number FOURTEEN (14) of SECTION A, on a Map of North Litchfield Beach made by Samuel M. Harper, R.L.S., dated December 1959, recorded in the office of the Clerk of Court for Georgetown County in Plat Book O, page 4.  

This deed contains neither courses and distances, nor metes and bounds.  It does, however, contain a list of fifteen enumerated restrictions.  Restriction seven provides in pertinent part as follows:

7.  The residence constructed on this lot, including porches or projections, shall not be erected nearer than 100 feet from highwater mark as shown on map, nor nearer than 5 feet to either side boundary lot, nor nearer than 25 feet to the rear line thereof, except in the event two (2) lots are purchased for the purpose of erecting thereon one single family dwelling the dividing line between said lots shall not be considered as a side line.  [Emphasis added.]  

On the Harper Plat, Book O at Page 4, Lot 14-A is depicted as a rectangle measuring 70 feet on the front and rear and 200 feet on both sides.  The front of the property faces west and borders Seaview Loop.  The rear of the property faces east and is bounded by a legend that says, Atlantic Ocean.  The words high-water mark do not appear anywhere on the Harper Plat.  
Cerasaro acquired Lot 14-A, including a residence, from Albert H. Agett in 1987.  The deed contained the same general description as noted in the 1960 Townsend deed.  It similarly provides neither courses and distances, nor metes and bounds.    
In 2004, Cerasaro began construction of an addition to his home that extended to within 119 feet of the high-water mark of the Atlantic Ocean as it then existed.  Such improvements, however, extended beyond the boundary line fronting the Atlantic Ocean as drawn on the Harper Plat.  As a result, Litchfield brought this action alleging Cerasaros construction violated the setback line and sought removal of the encroachment.  The parties disputed whether the setback line is to be measured from the undesignated line shown on the Harper Plat or whether it is to be measured from the mean high-water mark as it currently exists.[2] 
Cerasaro moved for summary judgment and Litchfield moved for partial summary judgment.  The trial court found the restriction was ambiguous, but resolved the ambiguity in favor of the free use of the property and granted partial summary judgment in favor of Cerasaro.  The court found for Cerasaro as a matter of law on the issue of the location of the setback line on his property as being measured one hundred (100) feet from the mean [high-water] mark of the Atlantic Ocean.  The court did not rule on the remaining issues of laches, waiver, and selective enforcement that were raised by the parties, noting those issues involved factual findings.   Litchfield appeals.
STANDARD OF REVIEW
Under the South Carolina Rules of Civil Procedure, summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Rule 56(c), SCRCP.
When reviewing the grant of summary judgment, the appellate court applies the same standard applied by the trial court pursuant to Rule 56(c), SCRCP.  Fleming v. Rose, 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002); see also Baird v. Charleston County, 333 S.C. 519, 529, 511 S.E.2d 69, 74 (1999) (Summary judgment is appropriate when it is clear that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.).  
In determining whether any triable issue of fact exists, the evidence and all inferences which can be reasonably drawn therefrom must be viewed in the light most favorable to the non-moving party.  Summer v. Carpenter, 328 S.C. 36, 42, 492 S.E.2d 55, 58 (1997).
LAW/ANALYSIS
I.  Ambiguity of Restriction
Litchfield first argues the trial court erred in ruling the deed restriction is ambiguous.  Litchfield contends that, to the contrary, the restriction is unambiguous because the boundary line fronting the Atlantic Ocean on the Harper Plat clearly establishes the high-water mark as of December 1959 and thus permanently fixes the setback line as being 100 feet from that point.  We disagree.
A contract is ambiguous when the terms of the contract are reasonably susceptible of more than one interpretation.  South Carolina Dept of Natural Resources v. Town of McClellanville, 345 S.C. 617, 550 S.E.2d 299 (2001).  Moreover,  [a] contract is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.   Hawkins v. Greenwood Dev. Corp., 328 S.C. 585, 592, 493 S.E.2d 875, 878 (Ct. App. 1997) (quoting 17A Am. Jur. 2d Contracts § 339 (1991)).
In this case, the deed restriction creates an ocean setback line at the high[-]water mark as shown on map.  The problem is, however, that the Harper Plat referenced in the deed does not contain any notation as to where the high-water mark is located.  There is a line on the Harper Plat that ends along a line 200 feet from Seaview Loop, which could indicate the depth of the lot.  On the other hand, the notation on the other side of the line is Atlantic Ocean.  Thus, it is unclear whether this line merely marks the edge of the property or if it is meant to be the high-water mark as of the time the Harper Plat was made in December 1959.  
The trial court found the restriction is ambiguous because the setback could be measured either from the usual high tide of the ocean or from the line purportedly showing the property border on the 1959 survey.  The trial court granted partial summary judgment to Cerasaro, ruling any ambiguity must be resolved in favor of the free use of property, thus the proper interpretation, as a matter of law, is that the deed refers to the mean high-water mark as it exists today.
In our opinion, the parties cannot determine, without resort to extrinsic evidence, where the high-water mark existed at the time the restriction was created and where it is supposed to be on the map.  Moreover, even if the line were clearly marked on the map, there is further ambiguity as to whether the parties intended the setback line to be 100 feet from the high-water mark as it existed in 1959, thus creating a permanent setback, or whether it was to be interpreted as restricting construction closer than 100 feet to the high-water mark as it exists at the point of construction, as the mean high-water mark is subject to fluctuation over the years.  Therefore, we hold the trial court properly determined the deed restriction is ambiguous.  
II.  Propriety of Granting Partial Summary Judgment
Litchfield further argues that, in the event we uphold the trial courts determination that the restriction is ambiguous, the trial court erred in resolving that ambiguity as a matter of law and granting partial summary judgment in favor of Cerasaro regarding the location of the setback line.  We agree.
The construction and enforcement of an unambiguous contract is a question of law for the court, and thus can be properly disposed of at summary judgment.  Middleborough Horizontal Property Regime Council of Co-Owners v. Montedison
S.p.A., 320 S.C. 470, 477, 465 S.E.2d 765, 770 (Ct. App. 1995).  In such a case, summary judgment is proper and a trial unnecessary where the intention of the parties as to the legal effect of the contract may be gathered from the four corners of the instrument itself.  First-Citizens Bank & Trust Co. v. Conway Natl Bank, 282 S.C. 303, 305, 317 S.E.2d 776, 777 (Ct. App. 1984).   
If, on the other hand, a contract is ambiguous or capable of more than one construction, the question of what the parties intended becomes one of fact and should, therefore, be decided by the trier of fact.  Middleborough, 320 S.C. at 477, 465 S.E.2d at 770.  Once a contract is before the court for interpretation, the paramount concern of the court is to give effect to the intention of the parties.  Id. 
In this case, the trial court found [t]he actual location of the oceanfront setback applicable to [Cerasaros] property is either measured from the high[-]water mark of the Atlantic Ocean or the most easterly line shown on the original 1959 subdivision plat [the Harper Plat].  Having found such an ambiguity, the trial court erred in resolving it as a matter of law.  See South Carolina Dept of Natural Resources v. Town of McClellanville, 345 S.C. 617, 623, 550 S.E.2d 299, 303 (2001) (When construing a restrictive covenant, [o]nce the court decides the language is ambiguous, evidence may be admitted to show the intent of the parties.  The determination of the parties intent is then a question of fact.).  
Cerasaro asserts the trial court properly applied South Carolina case law by resolving the ambiguity as a matter of law in favor of the grantee and the free use of property.  We disagree.
In Town of McClellanville, 345 S.C. at 622, 550 S.E.2d at 302, our supreme court stated:   It is still the settled rule in this jurisdiction that restrictions as to the use of real estate should be strictly construed and all doubts resolved in favor of free use of the property, subject, however, to the provision that this rule of strict construction should not be applied so as to defeat the plain and obvious purpose of the instrument.   (quoting Taylor v. Lindsey, 332 S.C. 1, 4, 498 S.E.2d 862, 864 (1998)) (alteration in original).
 The purpose of all rules of construction is to ascertain the intention of the parties to the contract.   Hansen v. United Servs. Auto. Assn, 350 S.C. 62, 68, 565 S.E.2d 114, 116 (Ct. App. 2002) (quoting Bruce v. Blalock, 241 S.C. 155, 161, 127 S.E.2d 439, 442 (1962)).  Resort may be had to rules of construction only where the language of the instrument, or of a portion thereof, is of doubtful or uncertain meaning, or is ambiguous or contradictory.  17A C.J.S. Contracts § 303 (1999).  [W]here the terms are ambiguous, the question of the parties intent must be submitted to the [trier of fact].  Hansen, 350 S.C. at 68, 565 S.E.2d at 116.
While the trial court correctly recognized Town of McClellanville favors construing the restrictive covenant here in favor of Cerasaro, under these circumstances we hold the trial court prematurely applied this rule of construction.  Once the trial court ruled the provision was ambiguous, the parties should have been allowed to present evidence as to the parties intent or the plain and obvious purpose of the restriction as these issues presented questions of fact that were not appropriate for determination as a matter of law on summary judgment.  See Hook v. Rothstein, 275 S.C. 187, 189, 268 S.E.2d 288, 289 (1980) (This court has often noted that summary judgment is appropriate only where it is perfectly clear that no genuine issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law.); 17B C.J.S. Contracts § 743 (1999) (Evidence as to the intention of the parties is relevant only if the contract in issue is ambiguous.  . . .  [I]n determining such intention the court may receive parol, or extrinsic evidence.  Extrinsic evidence in ascertaining the parties intent includes:  (1) the situation of the parties at the time the instrument was executed; (2) the circumstances under which the instrument was executed; and (3) the subsequent conduct of the contracting parties.).  Accordingly, we reverse the grant of partial summary judgment to Cerasaro and remand for further proceedings.[3]
REVERSED AND REMANDED.
GOOLSBY, HUFF, and STILWELL, JJ., concur.

[1]  This action was brought against the Thomas S. Cerasaro Qualified Personal Residence Trust Dated December 28, 2000, but for purposes of this opinion we shall refer to the defendant/respondent as Thomas Cerasaro or simply, Cerasaro. 
[2]  If the setback is measured from the line shown as the eastern boundary of Cerasaros lot on the Harper Plat, i.e., the line that is 200 feet from Seaview Loop, then Cerasaros home addition is, admittedly, inside the setback line.  If the setback is measured from the current mean high-water mark, however, the addition definitely is not in violation of the restriction.  The trial court noted the mean high-water mark of the Atlantic Ocean as of March 24, 2004 was between 245 feet and 253 feet from Seaview Loop.    
[3]  To the extent Litchfield also asserts on appeal that the trial court erred in failing to grant its motion for partial summary judgment, we find this question is not properly before us as the failure to grant a motion for summary judgment is not appealable.  Ballenger v. Bowen, 313 S.C. 476, 443 S.E.2d 379 (1994) (stating the denial of summary judgment is not directly appealable, even after final judgment, because it does not finally determine the merits of the case).