**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Alfred Jenkins and Mary Jenkins, Respondents,

v.

Ferrara Buist Company, LLC d/b/a Custom Crafted Homes, Appellant.

Appellate Case No. 2017-000600

———————

Appeal From York County
S. Jackson Kimball, III, Master-in-Equity

———————

Unpublished Opinion No. 2019-UP-311
Heard June 5, 2019 – Filed August 28, 2019

———————

**AFFIRMED AS MODIFIED IN PART, REVERSED
IN PART, AND VACATED IN PART**

———————

Paul B. Ferrara, III, of Ferrara Law Firm, PLLC, of North Charleston, for Appellant.

Brian Scott McCoy, of McCoy Law Firm, LLC, of Rock Hill, for Respondents.

———————

**PER CURIAM:** Ferrara Buist Company, LLC (Builder) appeals the master-in-equity's order releasing funds held by the York County Clerk of Court to Alfred

Jenkins and Mary Jenkins (Buyers). We affirm in part as modified, reverse in part, and vacate in part.

The parties in this case entered into a contract for the construction of a home. The original contract price was $741,095.00.[1] The parties' working relationship deteriorated, and Buyers ultimately did not purchase the home, which was still titled in Builder's name. At the time the parties ended their association, Buyers had paid a total of $643,760.70 to Builder. Buyers filed a lis pendens on the property and filed a complaint against Builder alleging an equitable lien, unjust enrichment, and breach of contract. Builder filed an answer and counterclaimed for breach of contract.

Meanwhile, Builder found a third-party buyer for the home willing to pay $850,000.00. In an effort to bring that sale to fruition, Builder agreed to deposit $663,395.37 with the York County Clerk of Court, and Buyers agreed to release the lis pendens on the property.[2]

Approximately two months later, Buyers filed a motion entitled "Notice of Motion and Motion for Partial Summary Judgment" wherein Buyers sought the release of the funds held by the Clerk of Court. In response, Builder filed a motion in opposition including an affidavit of Michael Adam Ferrara, one of Builder's members. Ferrara attested Buyers owed Builder $164,002.01 in damages.[3] The master granted Buyers' motion in full and released all the deposited funds to Buyers. The master's order stated "[Builder] is not entitled to the establishment of a fund to secure collection of additional damages it may be awarded through a trial of the case. [Builder] simply does not have a legal or equitable basis for the maintaining of such a fund." Furthermore, the master indicated its order was based in equity and the parties could still pursue their breach of contract claims against one another for contract-based damages. Builder appealed.

---

[1] Change orders to the contract made the final price $881,868.63.
[2] This amount represented the sum of the payments made by Buyers to Builder plus some additional costs incurred by Buyers for fixtures in the home.
[3] Builder's alleged damages include additional property taxes, interest on the lot closing cost, a lot assessment fee, a homeowner's association transfer fee, interest on non-payment of the balance due, realty commission fees, additional drainage installation fees, attorney's fees, and the unpaid balance of the contract minus the amount of profit earned from the third-party contract.

At oral argument before this court, Builder conceded the master could have, in its equitable powers, disbursed any *undisputed* funds to Buyers, provided the order did not make findings of fact that would limit Builder's ability to pursue its contractual remedies.  Consequently, we affirm the master's order to the extent it released the undisputed sum of $499,393.36 to Buyers.[4]  This amount equals the amount held by the Clerk of Court minus the amount of contractual damages alleged by Builder.

Turning now to the disbursement of the remaining *disputed* funds, the master's order indicates it exercised its equitable powers to return the entirety of the held funds to Buyers.  The master concluded the Builder was paid in full under the contract by virtue of the third-party sale, except for $31,861.13, and Builder was not entitled to a fund to secure its contractual claims against Buyers.  However, this rationale contains two flaws.  First, this conclusion discounts the possibility Builder suffered consequential damages if in fact it can prove Buyers breached the contract.  Second, the parties *agreed* to deposit the funds with the Clerk of Court in exchange for Buyers releasing their lis pendens on the property.  Buyers are the parties whose claims were secured by the deposit of the funds with the Clerk of Court.  Otherwise, Builder, legally in possession of the disputed funds at the time of the hearing, could have spent the monies, leaving Buyers to collect any judgment they obtained.

Because Builder alleged Buyers breached the contract and vice versa, genuine issues of material fact existed regarding both the amount of the total debt Builder owed to Buyers and whether it was inequitable for Builder to "retain" the disputed sum.[5]  *See Middleborough Horizontal Prop. Regime Council of Co-Owners v. Montedison S.p.A.*, 320 S.C. 470, 479, 465 S.E.2d 765, 771 (Ct. App. 1995) ("Summary judgment should be granted only when there is no genuine issue as to

---

[4] *See Sloan v. Friends of Hunley, Inc.*, 393 S.C. 152, 159 n.3, 711 S.E.2d 895, 898 n.3 (2011) (indicating a concession allows the court to end the matter); *Bowaters Carolina Corp. v. Carolina Pipeline Co.*, 259 S.C. 500, 505, 193 S.E.2d 129, 132 (1972) (holding an appellate court need not pursue an issue conceded during oral arguments).

[5] We note Builder did not actually retain the funds as they were on deposit with the Clerk of Court.

any material fact and the moving party is entitled to judgment as a matter of law.").[6]

The master's attempt to mix and match the legal and equitable remedies in this case demonstrates the often difficult task of sorting through such claims. *See McMahan v. McMahon*, 122 S.C. 336, 342, 115 S.E. 293, 295 (1922) ("When a certain state of facts under the law entitles a party to alternative remedies, both founded upon the identical state of facts, these remedies are not considered inconsistent remedies, though they may not be able to 'stand together' [—] the enforcement of the one remedy being a satisfaction of the party's claim."). The unique circumstances of this case, involving the cash purchase of a home, further complicates the issue. Nevertheless, based on Builder's concession, Buyers are entitled to the release of $499,393.36 from the total sum deposited with the York County Clerk of Court. The master's order is reversed insofar as it released any additional funds above and beyond that amount.[7] Any factual or legal findings underpinning the master's original order are vacated.

Therefore, the master's order is

**AFFIRMED IN PART AS MODIFIED, REVERSED IN PART, and VACATED IN PART.**

**HUFF, THOMAS, and KONDUROS, JJ., concur**.

---

[6] We recognize the master's order denies it is rendering summary judgment to any party. However, the finding Builder has no claim to the funds belies that position even if it was unintended.

[7] Buyers should deposit these funds back with the York County Clerk of Court pending trial or resolution of the parties' claims. The master shall conduct a hearing if necessary to facilitate this mandate. The trial of this matter should be conducted expeditiously so the damages assessed to either party can be finally determined and subject to the normal rules governing the collection of final judgments.