**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Saint Luke Baptist Church, Respondent,

v.

Rayshawn Terry, Appellant.

Appellate Case No. 2022-000987

_____

Appeal From Fairfield County
Brian M. Gibbons, Circuit Court Judge

_____

Unpublished Opinion No. 2024-UP-309
Submitted May 1, 2024 – Filed September 11, 2024

_____

**AFFIRMED**

_____

John Martin Foster, of Rock Hill, for Appellant.

Kenneth Allen Davis, Charles J. Boykin, and Imani Nicole Newborn, all of Boykin & Davis, LLC, of Columbia, for Respondent.

_____

**PER CURIAM:** Rayshawn Terry appeals the circuit court's grant of summary judgment in favor of Saint Luke Baptist Church (Saint Luke) as to its claims for declaratory and permanent injunctive relief and Terry's counterclaims for slander or slander per se, breach of contract or breach of contract with fraudulent intent,

conversion, and non-payment of wages. Terry argues the circuit court erred in granting summary judgment because discovery was incomplete and he presented evidence of a genuine issue of material fact. We affirm.

**FACTS AND PROCEDURAL HISTORY**

Saint Luke, a Baptist church, was established in 1893 in Winnsboro. Saint Luke hired Terry to serve as its pastor on August 1, 2019, following the recommendation of the board of deacons and a vote by the congregation. Saint Luke's bylaws, which Saint Luke attached as an exhibit to its complaint, state that "[c]hurch conference meetings for business shall be held every quarter" and that "[s]pecial meetings may be called by the Pastor, or in case of sickness of the Pastor, by the Assistant Pastor, in the absence of both of the above, the chairman of the Board of Deacons." The bylaws also state that twenty-five members of the church must be present at the meetings to constitute a quorum for any business transactions.

On December 20, 2020, a meeting of Saint Luke's board of deacons was held with seven of the nine deacons present. The seven deacons unanimously voted to recommend the termination of Terry's employment as pastor of Saint Luke. Two days later, Terry attempted to unilaterally remove several deacons from the board of deacons. The congregation was informed by phone call and text of a quarterly business meeting to take place on December 26, 2020. In his deposition, Terry acknowledged he encouraged members not to attend this meeting. Barzelle Manning, Saint Luke's director of evangelism, also discouraged the congregation from attending the meeting.

At the business meeting, Kirk Chappell, chairman of the board of deacons, stated it was "a special called meeting." Sixty-eight of the 125 active members of Saint Luke accepted the recommendation of the board of deacons and voted to remove Terry as pastor. The number of members present at the meeting exceeded the twenty-five members required for a quorum and constituted a majority of Saint Luke's active membership. A third party, Rev. Dr. Preston Harrison, served as a mediator at the meeting to ensure the legitimacy of the vote. Dr. Harrison certified the vote and verified the vote occurred in accordance with Saint Luke's bylaws.

In a December 26, 2020 letter, Saint Luke informed Terry of his removal as pastor. A December 30, 2020 letter from Saint Luke's counsel notified Terry of the church's request that he "cease and desist any further communications with [Saint Luke] and its members representing that [he was] the Pastor of Saint Luke." The letter also notified Terry he was no longer authorized to use Saint Luke's name, image, or likeness. On January 5, 2021, Terry was served with copies of the

December 26, 2020 letter and the December 30, 2020 letter. On January 9, 2021, Saint Luke informed the Fairfield County Sheriff's Office that Terry removed all other members of Saint Luke from its online giving account and provided his name as the only account owner.

Saint Luke filed a complaint requesting the circuit court find Terry's termination was in accordance with the church's bylaws, issue a temporary restraining order or preliminary injunction to prevent Terry from continuing to act as pastor of Saint Luke, and issue a permanent injunction to prevent Terry from acting as pastor. On February 4, 2021, the circuit court issued a temporary injunction restraining Terry from acting on behalf of Saint Luke in any capacity, interfering with Saint Luke's financial accounts, and making disparaging comments on any social media or virtual platform regarding Saint Luke. The circuit court also ordered Saint Luke to hold a meeting of its members within thirty days to determine who would serve as its pastor or interim pastor. The circuit court prohibited Terry from attending the meeting.

On February 18, 2021, Terry filed an answer and counterclaims, which included claims of conversion, slander or slander per se, breach of contract or breach of contract with fraudulent intent, and violation of the South Carolina Wage Payment Act (the Wage Payment Act).[1] Terry alleged Saint Luke entered a "covenant contract" with him when it hired him and asserted in his breach of contract claim that Saint Luke violated the terms of the covenant contract when it fired him without ninety-days' notice and did not compensate him during the ninety-day period, which he alleged was required by the contract. Saint Luke served Terry with its first set of interrogatories and a request for production on June 10, 2021.

On August 5, 2021, Terry filed a wage complaint with the South Carolina Department of Labor, Licensing, and Regulation (LLR), contending Saint Luke failed to pay his full wage for 2020. Saint Luke received notice of the complaint and provided LLR with a spreadsheet of Terry's wages for 2020 and copies of twenty-six checks dated from January 2020 to February 2021 covering Terry's salary for 2020. Saint Luke contended these documents showed Terry was paid his full wage for that year. LLR completed its investigation and found it did not reveal any violations of the Wage Payment Act on the part of Saint Luke.

Terry issued his initial discovery requests on October 21, 2021, to which Saint Luke responded on November 24, 2021. Terry requested "documents regarding the subject transaction"; correspondence and communications between the parties;

---

[1] S.C. Code Ann. §§ 41-10-10 to -110 (2021).

documents referenced in his interrogatories; any photographs, diagrams, sketches, plats, or other prepared documents relating to the civil action; tax returns Saint Luke filed for 2019 through 2021; "financial records of, or relating to" Saint Luke; documents relating to Saint Luke's taxable status; any financial records of loans or mortgages taken out by Saint Luke since 2015; and any minutes or documents relating to meetings held by Saint Luke. Saint Luke attached 141 pages of discovery in response to Terry's request for production. Saint Luke objected to Terry's request for financial records, arguing the phrase "financial records" was not defined. Terry filed no other discovery requests, notices of deposition, or motions to compel further discovery from Saint Luke.

During his December 17, 2021 deposition, Terry testified he did not remember the terms of his employment with the church offhand but he recalled "reading the amount of Sundays that [he] was supposed to preach" and who he needed to notify if he would be absent. He stated he believed his contract with Saint Luke was a covenant contract, not an employment contract. Regarding the covenant contract, he testified that "from [his] memory, there was no expiration date" but that "[he] would assume it would be a [for a certain] length of time." Terry stated he could not answer questions regarding what time period the contract applied to because he did not have "the data information . . . to say [the covenant contract] was for three days or a certain amount of time." As to his conversion claim, Terry stated he brought "a keyboard and its wires and plug-ins" and "a guitar rig and its fittings" to Saint Luke but that he could not provide an "exhaustive list because [he] believe[d] there was a list that was submitted [to Saint Luke]." Terry stated he voluntarily brought his personal property to Saint Luke and that no one at Saint Luke assumed responsibility for his belongings. He testified Saint Luke returned most of his belongings but he believed he could not retrieve the remaining items because of a no-trespassing order. Terry testified he based his slander cause of action on "the lawsuit that was against [him] from Saint Luke Baptist Church, that [he] took church funds" and he agreed he was relying on the pleadings "that said that [he] took church funds." Terry also stated he did not receive his full salary of $41,000 for 2020 but he could not recall how much more Saint Luke owed him for that year.

Saint Luke filed a motion for summary judgment as to its claims seeking declaratory judgment and permanent injunctive relief and Terry's counterclaims. Saint Luke argued (1) Terry's conversion claim failed because he did not provide evidence Saint Luke assumed and exercised a right of ownership over his property; (2) his breach of contract claim failed because no binding contract existed between the parties and he was employed at-will; (3) his slander claims failed because the

alleged defamatory statements were privileged; and (4) his claim for violation of the Wage Payment Act failed because he provided no evidence Saint Luke withheld his wages. Saint Luke also attached an affidavit from Chappell to its motion for summary judgment in which Chappell stated the quarterly business meeting was scheduled for December 26, 2020, and that Saint Luke had not held quarterly business meetings in 2020 prior to December because of the COVID-19 pandemic. Chappell's affidavit also stated that after removing everyone but himself from Saint Luke's online giving platform, Terry instructed church members to use the online giving platform instead of giving monetary offerings directly to Saint Luke.

Terry opposed the motion for summary judgment, arguing that his slander or slander per se claim was based on statements made by Chappell and told to him by an individual named Brenda Anderson. Terry included an affidavit affirming he believed "this story was invented and spread to justify [his] treatment by the Church and those influential members who wished [him] gone." Terry's affidavit also provided a list of items he alleged Saint Luke refused to return to him, which included an "HD I Rig," "several pictures that [he] purchased that were gifts," "2 Behringer Speaker Monitors with their power [c]ords and accessory components," a "Sling TV device," an "[iPad] stand," and "missing power [cords] to [his] keyboard and stick system." Terry argued summary judgment was not appropriate when discovery was incomplete. He contended Saint Luke failed to produce the covenant contract and that constituted spoliation of that evidence.

After holding a hearing on Saint Luke's motion, the circuit court issued an order granting summary judgment on April 22, 2022. The circuit court found Saint Luke was entitled to declaratory judgment because its removal of Terry as pastor followed the church's bylaws and that Saint Luke was entitled to a permanent injunction against Terry to prevent future harm to the church. The circuit court found Saint Luke was entitled to summary judgment as to all of Terry's counterclaims, but it did not address Terry's argument regarding incomplete discovery. Terry filed a motion to alter or amend the judgment, in which he again argued discovery was incomplete and spoliation of evidence on the part of Saint Luke. The circuit court denied the motion. This appeal followed.

**STANDARD OF REVIEW**

"When reviewing the grant of a summary judgment motion, [an appellate] court applies the same standard that governs the trial court under Rule 56(c), SCRCP; summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *S. Glass &*

*Plastics Co. v. Kemper*, 399 S.C. 483, 490, 732 S.E.2d 205, 208-09 (Ct. App. 2012).  "In determining whether summary judgment is proper, the court must construe all ambiguities, conclusions, and inferences arising from the evidence against the moving party."  *Weston v. Kim's Dollar Store*, 399 S.C. 303, 308, 731 S.E.2d 864, 866 (2012) (quoting *Byers v. Westinghouse Elec. Corp.*, 310 S.C. 5, 7, 425 S.E.2d 23, 24 (1992)).  "Once the moving party carries its initial burden, the opposing party must come forward with specific facts that show there is a genuine issue of [material] fact remaining for trial."  *S. Glass & Plastics Co.*, 399 S.C. at 490, 732 S.E.2d at 209 (quoting *Sides v. Greenville Hosp. Sys.*, 362 S.C. 250, 255, 607 S.E.2d 362, 364 (Ct. App. 2004)).  "When a party makes a motion for summary judgment, 'an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial.'"  *Coker v. Cummings*, 381 S.C. 45, 54, 671 S.E.2d 383, 388 (Ct. App. 2008) (quoting *S.C. Elec. & Gas Co. v. Combustion Eng'g, Inc.*, 283 S.C. 182, 188-89, 322 S.E.2d 453, 457 (Ct. App. 1984)).  "When evidence is susceptible to more than one reasonable inference, the issue should be submitted to the jury."  *Murphy v. Tyndall*, 384 S.C. 50, 54, 681 S.E.2d 28, 30 (Ct. App. 2009).

## LAW AND ANALYSIS

### I.　　　Incomplete Discovery Regarding Terry's Counterclaims

Terry argues the circuit court erred in granting Saint Luke's motion for summary judgment because discovery was incomplete and there was "every indication [Saint Luke was] in possession of other information and documents relevant" to the case. He contends summary judgment was premature when he conducted one deposition, Saint Luke responded to most of his requests for production with objections, and no scheduling order was issued to settle discovery deadlines.  Terry asserts Saint Luke failed to produce the covenant contract and relevant financial information that he requested.  We disagree.

We hold Terry has provided no explanation as to why the time between the filing of the case and Saint Luke's motion for summary judgment was insufficient for the parties to engage in full discovery.  *See Middleborough Horizontal Prop. Regime Council of Co–Owners v. Montedison S.p.A.*, 320 S.C. 470, 479-80, 465 S.E.2d 765, 771 (Ct. App. 1995) (affirming summary judgment when appellants "advance[d] no good reason why four months was [an] insufficient [amount of] time under the facts of [that] case to develop documentation in opposition to the motion for summary judgment").  The action was filed on January 14, 2021, and

Terry filed his answer and counterclaims on February 18, 2021, almost a year before Saint Luke filed its February 4, 2022 motion for summary judgment. Terry did not file a request for production until October 21, 2021—ten months after the action commenced. Terry requested Saint Luke's financial records, but he did not specifically request the covenant contract be produced despite knowing he would need it to prove the allegations in his breach of contract or breach of contract with fraudulent intent claim. He never made additional discovery requests, filed a motion to compel, or served any notices of deposition after receiving Saint Luke's prompt discovery responses on November 24, 2021. He made no mention of the need for additional discovery until after Saint Luke filed its motion for summary judgment. Terry provided no explanation for why he did not include the covenant contract in his request for discovery or why he did not make additional discovery requests after Saint Luke submitted what he considered incomplete responses to his initial discovery requests. Therefore, we hold Terry has failed to provide a reason why the time available for discovery was insufficient.

Further, we hold Terry failed to establish that additional discovery would have led to evidence that would have created a genuine issue of material fact. *See Baughman v. Am. Tel. & Tel. Co.*, 306 S.C. 101, 112, 410 S.E.2d 537, 544 (1991) (holding the nonmoving party must demonstrate that further discovery will likely uncover additional relevant evidence). Although Terry argues discovery could lead to the production of the covenant contract he entered into with Saint Luke, Saint Luke contends such a contract does not exist and Terry testified he could not recall the terms of this contract. In his breach of contract or breach of contract with fraudulent intent claim, Terry contended Saint Luke breached the covenant contract by not giving him ninety-days' notice prior to firing him, but he did not offer any testimony during his deposition regarding the terms of the covenant contract that formed the basis of that allegation. Because Terry failed to offer any testimony or other evidence setting forth the terms of the alleged covenant contract and Saint Luke denies its existence, we find Terry failed to demonstrate further discovery would likely uncover additional relevant evidence. Thus, we reject Terry's argument that summary judgment was premature.

## II.       Declaratory Judgment

Terry argues the circuit court erred in granting Saint Luke summary judgment as to its declaratory judgment action because there was a genuine issue of material fact as to whether Saint Luke's termination of his employment as pastor complied with its bylaws. He contends the meeting that resulted in his termination was not called by him as pastor, the assistant pastor, or the chairman of the board of deacons as

the bylaws required. Terry also asserts the procedure of people attending the meeting in cars and sounding their car horns in agreement was not part of the bylaws. We disagree.

We hold the circuit court did not err in granting Saint Luke's motion for summary judgment on this issue because there is no genuine issue of material fact as to whether the vote to terminate Terry as pastor of Saint Luke occurred in accordance with the bylaws of the church. *See S. Glass & Plastics Co.*, 399 S.C. at 490, 732 S.E.2d at 209 ("Once the moving party carries its initial burden, the opposing party must come forward with specific facts that show there is a genuine issue of [material] fact remaining for trial." (quoting *Sides*, 362 S.C. at 255, 607 S.E.2d at 364)). Saint Luke's bylaws did not include instructions regarding termination of its pastor. Although the bylaws state that only the pastor or assistant pastor may call a special meeting, the bylaws do not state a specific person must call a quarterly business meeting. While the meeting's minutes show Chappell referred to the meeting as "a special called meeting," Chappell's affidavit stated that a quarterly business meeting was already scheduled for December 26, 2020. Further, Dr. Harrison certified the vote and verified the vote occurred in accordance with Saint Luke's bylaws. Additionally, we hold Terry presented no evidence that allowing members to attend by car and sound the car horn to vote invalidated the vote because the bylaws contain no required method for voting.

Based on the foregoing, we hold Terry failed to present evidence that the method of calling the meeting regarding his termination did not comply with Saint Luke's bylaws. Accordingly, we affirm the circuit court's grant of summary judgment to Saint Luke on its claim for declaratory judgment.

## III.    Conversion

Terry argues there was a genuine issue of material fact as to his conversion claim regarding Saint Luke's retention of items belonging to him. He argues Saint Luke did not deny retaining some of his belongings and gave no reason for retaining them. He also asserts he sets out the grounds for his conversion claim because no evidence was presented that he intended to gift the items to Saint Luke or abandon the items. We disagree.

We hold the circuit court did not err in granting Saint Luke's motion for summary judgment as to Terry's conversion claim because he provided no evidence Saint Luke wrongfully took control of any goods or personal property belonging to him. *See Hawkins v. City of Greenville*, 358 S.C. 280, 297, 594 S.E.2d 557, 566 (Ct. App. 2004) ("Conversion is the unauthorized assumption and exercise of the right

of ownership over goods or personal chattels belonging to another, to the alteration of the condition or the exclusion of the owner's rights." (quoting *Crane v. Citicorp Nat'l Servs. Inc.*, 313 S.C. 70, 73, 437 S.E.2d 50, 52 (1993), *superseded by statute on other grounds*)). Terry testified he brought a keyboard and guitar rig to the church, but he stated he brought it voluntarily and Saint Luke never assumed responsibility for the items. Later in his affidavit, Terry provided a list of other belongings he alleged Saint Luke refused to return or to allow him to retrieve. However, Saint Luke included a letter dated January 5, 2021, as an exhibit to its motion for summary judgment in which it requested that Terry pick up any personal belongings from the church within thirty days of receiving the letter or the church would consider the items abandoned. Therefore, we hold Terry failed to show a genuine issue of material fact existed as to his conversion claim because he stated Saint Luke never assumed responsibility for the personal belongings he left at the church and Saint Luke gave him the opportunity to retrieve the items. *Id.* ("Conversion is a wrongful act which emanates by either a wrongful taking or wrongful detention."). Accordingly, we affirm the circuit court's grant of summary judgment as to this issue.

## IV.       Breach of Contract or Breach of Contract with Fraudulent Intent

Terry argues the circuit court erred in granting Saint Luke's motion for summary judgment as to his breach of contract or breach of contract with fraudulent intent claim. He contends he had a covenant contract with Saint Luke and that Saint Luke suppressed or destroyed evidence of the contract. Terry asserts evidence was presented to dispute Saint Luke's claim that his employment was at-will. He also argues the statute of frauds is an insufficient reason to grant summary judgment even if his contract was an oral contract without an expiration date because it was a contract for permanent employment. We disagree.[2]

We hold the circuit court did not err in granting Saint Luke's motion for summary judgment on Terry's breach of contract or breach of contract with fraudulent intent claim. *See S. Glass & Plastics Co.*, 399 S.C. at 491, 732 S.E.2d at 209 ("The

---

[2] Because we hold there was no genuine issue of material fact regarding Terry's breach of contract or breach of contract with fraudulent intent claim due to the nature of Terry's at-will employment, we need not address Terry's argument that the statute of frauds was not a proper basis for summary judgment. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding the appellate court need not address the remaining issues when disposition of a prior issue is dispositive).

elements for a breach of contract are the existence of the contract, its breach, and the damages caused by such breach."); *Harper v. Ethridge*, 290 S.C. 112, 119, 348 S.E.2d 374, 378 (Ct. App. 1986) ("In order to state a claim for breach of contract accompanied by a fraudulent act, the plaintiff must plead facts establishing three elements: (1) a breach of contract; (2) fraudulent intent relating to the breaching of the contract and not merely to its making; and (3) a fraudulent act accompanying the breach."). Terry testified that he worked for Saint Luke under a covenant contract, rather than an employment contract, and that he did not recall whether the contract included a definite end date to his employment. In his counterclaims, Terry alleged that Saint Luke breached the covenant contract by firing him without giving him ninety-days' notice, but Terry offered no testimony regarding this term of the covenant contract in his deposition. Saint Luke argues Terry's employment was at-will. The record reflects that Saint Luke denies the existence of any written contract between the parties, and Terry failed to recall any of the terms of such contract or provide any other evidence to show it existed. By Terry's own admission, Saint Luke hired him for an indefinite period, and Terry failed to produce any evidence of a contract between him and Saint Luke that indicated he was not an at-will employee; thus, we hold there is no genuine issue of material fact as to whether Terry's employment was at-will, and therefore Saint Luke could end his tenure as pastor at its discretion. *See Hall v. UBS Fin. Servs. Inc.*, 435 S.C. 75, 82, 866 S.E.2d 337, 340 (2021) ("[W]hen the hiring is for an indefinite period, the employment is at[-]will and the contract is unenforceable as to its duration."); *id.* at 89, 866 S.E.2d at 344 (stating "there is no breach of contract when an employer fires an at-will employee"). Accordingly, we hold the circuit court did not err in granting Saint Luke's motion for summary judgment as to this issue.

### V.      Slander or Slander Per Se

Terry argues the circuit court erred in granting Saint Luke's motion for summary judgment as to his slander or slander per se claim. He asserts that his memorandum in opposition to Saint Luke's motion for summary judgment stated he heard from Anderson, who heard from Chappell, that allegations were made that he stole funds from Saint Luke; therefore, the basis of his claim was a statement made by a third party, not the pleadings alone. We disagree.

We hold the circuit court did not err in granting Saint Luke's motion for summary judgment as to Terry's slander or slander per se claim because he based his claim on statements found in the pleadings, which were privileged statements. *See McKesson & Robbins v. Newsome*, 206 S.C. 269, 276, 33 S.E.2d 585, 587 (1945) (holding that statements contained in a complaint were privileged and could not be

the basis for a libel action).  During his deposition, Terry stated he based his slander or slander per se claim on the allegations in Saint Luke's complaint that he stole funds from Saint Luke.  He did not mention any other basis for the claim.  Later, in his memorandum in opposition to Saint Luke's motion for summary judgment, which he affirmed by his affidavit, Terry stated his slander or slander per se claim was based on comments that Anderson told him Chappell made.  No affidavit from Anderson was provided.  We hold this court may disregard Terry's affidavit and statement in his memorandum in opposition because they contradict his prior sworn testimony.  *See Cothran v. Brown*, 357 S.C. 210, 218, 592 S.E.2d 629, 633 (2004) ("[A] court may disregard a subsequent affidavit as a 'sham,' that is, as not creating an issue of fact for purposes of summary judgment, by submitting the subsequent affidavit to contradict that party's own prior sworn statement.").  Terry's affidavit offered no explanation for the change in his testimony regarding the basis for his slander or slander per se claim.  *See id.* (listing considerations for "distinguishing between a sham affidavit and a correcting or clarifying affidavit" including "whether an explanation is offered for the statements that contradict prior sworn statements"); *see also McMaster v. Dewitt*, 411 S.C. 138, 149, 767 S.E.2d 451, 457 (Ct. App. 2014) ("A deponent 'cannot create a conflict and resist summary judgment with an affidavit that . . . does not give a satisfactory explanation of why the testimony is changed.'" (alteration in original) (quoting *Torres v. E.I. Dupont De Nemours & Co.*, 219 F.3d 13, 20 (1st Cir. 2000))).  Accordingly, we hold no genuine issue of material fact exists as to Terry's slander or slander per se claim, and we affirm the circuit court's grant of summary judgment to Saint Luke as to this issue.

### VI.        Non-payment of Wages

Terry argues the circuit court erred in granting Saint Luke's motion for summary judgment as to his claim for non-payment of wages.  He notes Saint Luke refused to produce relevant financial records because his request was "not defined," but he asserts his request for production "was clear enough to allow production of any evidence as to wages prior to the motion."  Terry also argues his sworn testimony contradicted the figures in the wage report submitted by Saint Luke with its motion for summary judgment.  He maintains the letter from LLR stating it would not investigate his wages issue further did not preclude him from taking further action to receive the lost wages.  We disagree.

We hold the circuit court did not err in granting Saint Luke's summary judgment on Terry's claim of non-payment of wages because there was no genuine issue of material fact as to whether Terry received wages from Saint Luke.  *See* § 41-10-80(C) ("In case of any failure to pay wages due to an employee as required

by Section 41-10-40 or 41-10-50 the employee may recover in a civil action an amount equal to three times the full amount of the unpaid wages . . . ."). Saint Luke provided its wages report and copies of the checks paid to Terry showing it paid him a net amount of $41,722.13 for 2020. Additionally, LLR investigated Terry's claims and found no violations of the Wage Payment Act on the part of Saint Luke. Although Terry stated in his deposition that he was not paid his annual salary of $41,000 in 2020, he did not provide any evidence supporting his claim and the evidence presented showed he had been paid his full wage for 2020. *See S. Glass & Plastics Co.*, 399 S.C. at 490, 732 S.E.2d at 209 ("Once the moving party carries its initial burden, the opposing party must come forward with specific facts that show there is a genuine issue of [material] fact remaining for trial." (quoting *Sides*, 362 S.C. at 255, 607 S.E.2d at 364)). Accordingly, we hold the circuit court did not err in granting summary judgment to Saint Luke on this issue.

**CONCLUSION**

Based on the foregoing, the circuit court's grant of summary judgment in favor of Saint Luke is

**AFFIRMED.**[3]

**GEATHERS, HEWITT, and VINSON, JJ., concur.**

---

[3] We decide this case without oral argument pursuant to Rule 215, SCACR.